**E.M. KELLEY, et al., Appellants,**

**v.**

**ATLANTIC GULF STEVEDORES, INC.,
et al., Appellees.**

**No. C14–83–576–CV.**

Court of Appeals of Texas,
Houston (14th Dist.).

Nov. 8, 1984.

Richard L. Reedy, Kain & Reedy, Gray H. Miller, Fulbright & Jaworski, Houston, for appellants.

Henry P. Giessel, Alice Giessel, Talbert, Giessel, Stone, Barker & Lyman, Houston, for appellees.

Before PAUL PRESSLER, ROBERTSON and ELLIS, JJ.

## OPINION

ELLIS, Justice.

This is a damages suit. Appellant, E.M. Kelley, appeals from a judgment in his favor for $10,000 arising out of an automobile accident, in which appellant sued for personal injuries. After a jury trial, the judge entered a judgment for Texas Employers' Insurance Association, the intervenor, for that amount. We reverse and remand for a new trial.

Appellant raises nine points of error on appeal. In points of error one, two, and three appellant alleges that the court erred in refusing to grant him a new trial based upon the jury's answers "none" to the issue of past physical and mental anguish, lost earnings in the past, and medical expenses in the past because the jury's answers are contrary to the undisputed evidence of all three items. In appellant's last six points of error, appellant argues that the court erred in refusing to grant appellant a new trial based upon the jury's answers of "none" to the issue of lost past earnings, past physical pain and mental anguish, future physical pain and mental anguish, past medical expenses, past physical impairment, and future physical impairment because those answers are against

the great weight and preponderance of the evidence as to be manifestly unjust.

On July 28, 1978, appellant was driving his pick-up truck on the lower port road at the Port of Houston when his truck collided with a vehicle driven by Louid Culbertson, a defendant at trial and an employee of appellee, Atlantic Gulf Stevedores, Inc. Culbertson hit appellant's vehicle on the driver's side. On impact, appellant struck his head on the driver's door, and then against the sun visor and windshield. His stomach was thrown against the steering wheel. Although he was stunned and had a headache, appellant returned to work. Appellant began to feel worse after a short time and his supervisor allowed him to go home. Appellant did not return to work that day. Instead, he went to a medical clinic where he was seen by Dr. William Giessel.

At trial Dr. Giessel testified that in 1972 he referred appellant to Dr. Frank Barnes for back surgery. Between 1972 and 1978, appellant did not return to Dr. Giessel's concerning his back. Dr. Giessel testified that he examined appellant on the day of the accident. Appellant complained to the doctor of tenderness and soreness involving the lumbar spine, left knee, left ribs, and skull. He also complained of a headache and pain in his neck. In his examination of appellant, Dr. Giessel found soreness in the lower part of his back, difficulty in bending, pain over his left ribs, and a sore head. The doctor prescribed physical therapy and pain medication. The doctor's diagnosis was that "he was bruised all over." He estimated healing time to be between four and six weeks. Though he remained under the care of Dr. Giessel, appellant's condition worsened.

Appellant returned to Dr. Barnes, the doctor who operated on his back in 1972. Dr. Barnes testified that his initial diagnosis was neck and back strain. Under Dr. Barnes' care, appellant's condition still deteriorated. In early 1979 Dr. Barnes admitted appellant to the hospital in order to perform a myelogram. Based on the results of the myelogram and a physical ex-

amination, Dr. Barnes operated on appellant's back. The doctor testified that he believed appellant's accident caused a reherniation of the previously injured disc, a rupture of another disc, and a breakdown of his spinal fusion, which was done in his 1972 back surgery. Appellant returned to work eighteen months after the second surgery, but he testified that he was not able to perform all of his duties. In September, 1981, Dr. Barnes hospitalized appellant again to do another myelogram and additional back surgery. After the third operation appellant was not able to return to work.

Dr. Thomas Only of the Milby Clinic testified. He confirmed appellant's complaint of pain in the lower back and headaches. Only's examination of appellant revealed no serious orthopedic problem. However, he testified that he could not disagree with Dr. Barnes' opinion since Barnes was the operating surgeon.

At trial appellee called an orthopedic surgeon, Richard DeYoung, who had examined appellant on one occasion after the 1979 surgery but before the 1981 surgery. Dr. DeYoung disagreed with Dr. Barnes concerning a fracture to the fusion but did agree with Dr. Barnes' conclusion that appellant herniated one disc and reherniated another disc as a result of the accident.

Appellant testified that since 1973 he has been a walking foreman with the Port of Houston Terminal, Inc. As a walking foreman, his duties included checking to see if all the needed forklifts and other gear are present and assigning jobs to the men under him. His job required him to bend, stoop, and climb.

Appellant stated that he spent three weeks in the hospital for back surgery in early 1979. He said he spent a year and a half at home on "quite a bit" of pain medication. He then went back to work for four or five months, he testified, but was not able to work the hours he once worked. Appellant said due to his deteriorating condition, he was hospitalized in September, 1981, for two to three weeks. The 1981 surgery, appellant stated, did not help his

problems except for a short time. He testified that he has not been able to return to work since September, 1981. At the time of trial, appellant saw the doctor at least monthly and underwent occasional physical therapy. He testified that he does not do "much of anything" since he returned home from the 1981 operation. He said that a trip in his truck of approximately 150 miles is hard on him and that he can no longer do things around the house. His reason for not returning to work was the pain he suffers in just moving around the house. He said he can no longer ride horses and take trail rides, a hobby of his for many years. Appellant testified that he was hospitalized for therapy in October, 1982, because he was not able to straighten up from a stooping position and that in December, 1982, he was put in a pain clinic for nine days. His approximation of his past medical expenses was $30,000 to $40,-000.

When appellant took the witness stand for the second time he testified about his wages. According to his testimony, his earnings were as follows:

| 1976 | $18,957.61 |
| 1977 | $13,222.81 |
| 1978 | $14,672 |
| 1979 | $ 4,172 |
| 1980 | $14,169 |
| 1981 | $16,537 |
| 1982 | $ 2,746.80 |

He also testified again to the discomfort he suffers as he is walking, a sensation he said he never experienced before the 1978 accident.

Three friends of appellant testified. Charles Coburn, who knew appellant for 20 years through work on the docks, testified that after the 1972 surgery appellant had no problems. Coburn testified that appellant was able to bend, stoop, and lift. He could not testify as to appellant's condition after 1977 because he obtained another job and was not around appellant anymore. Robert Blanton, a friend of appellant's for 22 years also through his work as a longshoreman, stated that after the accident appellant would work probably an hour or so since he could not stand for any length of time. Blanton also said that appellant had no problems prior to the accident. James Wilkins, a friend of 20 years and a neighbor for 15 years, testified that before 1978 appellant's ability to get around and do things was "as good as mine or yours." He said appellant now can only stand 45 minutes at a time.

Appellant's wife also testified. She stated that appellant cannot do things around the house. She said after 1978 appellant worked on and off and since September, 1981, he has not worked at all.

To establish the amount of lost wages appellant took the deposition of Randolph Thomson, a business agent of ILA Local 1330, appellant's local union. Thomson testified that appellant worked 24 years on the docks, but had not worked since September, 1981. He said appellant's job involved much walking and frequent climbing, bending, stooping, and lifting. Thomson testified that if appellant worked at the time of the deposition he would make $15.75 per hour with a 9½ hour day.

The jury found appellee Louid Culbertson negligent with respect to lookout. Appellant was found to be negligent in his application of brakes. The jury determined that both appellee Culbertson and appellant Kelley were each 50% negligent.

Special Issue No. 8 read:

Find from a preponderance of the evidence what sum of money, if any, if paid now in cash, would fairly and reasonably compensate E.M. Kelley for his injuries, if any, resulting from the occurrence in question.

You are to consider each element of damage separately, so as not to include damages for one element of any other element. Do not include any amount for any condition existing before the occurrence in question, except to the extent, if any, that you find from a preponderance of the evidence that such other condition, if any, was aggravated by the injuries, if any, which resulted from the occurrence in question.

Answer separately in dollars and cents, if any, with respect to each of the following elements...

The following damages were found by the jury:

a. Loss of earnings in the past.
Answer: None

b. Loss of earning capacity, in reasonable probability, he will sustain in the future.
Answer: $20,000

c. Physical pain and mental anguish in the past.
Answer: None

d. Physical pain and mental anguish that, in reasonable probability, he will suffer in the future.
Answer: None

e. Physical impairment in the past.
Answer: None

f. Physical impairment that, in reasonable probability, he will suffer in the future.
Answer: None

g. Medical expenses in the past.
Answer: None

h. Medical expenses that, in reasonable probability, he will incur in the future.
Answer: None

We will deal with all nine points of error at once. The problem before this court is not inadequate damages. Rather, the problem revolves around the fact that the jury awarded damages for loss of future earnings and no damages for any other category of damages submitted to the jury in the court's charge.

■ "A court is under the duty to reconcile conflicting jury findings if at all possible." *Signal Oil & Gas Co. v. Universal Oil Products*, 572 S.W.2d 320 (Tex.1978). We find in this case that it is not possible to reconcile the jury findings.

Many other courts of appeals have been faced with the same awkward jury answers and have reversed and remanded the cases. In *Morgan v. Mustard*, 480 S.W.2d 416 (Tex.Civ.App.—El Paso 1972, no writ), the plaintiff was given no award for physical pain and mental anguish, even though a doctor testified that she suffered spinal injuries, that he prescribed medication and a neck collar, and that muscle spasms were evident. The jury awarded the plaintiff medical expenses. The court found the award of medical expenses and denial of compensation for physical pain and mental anguish was against the great weight and preponderance of the evidence as to be manifestly unjust. In the case at bar, we have uncontradicted testimony as to appellant's disc injuries, as well as to a prescription for pain medication and physical therapy. In *Blair v. Buksnys*, 521 S.W.2d 652 (Tex.Civ.App.—San Antonio 1975, no writ), the plaintiff had had a prior back operation. Medical evidence showed that the accident resulted in a soft tissue injury, causing a reoccurrence of his back pain. The court found that the jury believed that the plaintiff would have future medical problems as a proximate result of a 1972 accident. The court reversed the trial court's judgment since it concluded that in the situation where medical expenses had been awarded, the jury's failure to award damages for physical pain and mental suffering is so against the great weight and preponderance of the evidence as to be manifestly unjust.

In our case the jury by their answer to Special Issue No. 8(B) found that there would be lost future wages, in the amount of $20,000, due to injuries resulting from the automobile accident. By answering this special issue in this way, the jury has stated that there was some injury as a result of the accident.

■ The jury found that appellant suffered injury as a result of the accident since they found that appellant suffered a loss of future wages. Therefore, we find that it is against the great weight and preponderance of the evidence presented in this case to answer "none" to the issue concerning lost past wages. We further find the jury's answer awarding $20,000 for lost future wages to be in conflict with the answer "none" to lost past wages. It is indeed strange that a jury could find lost

wages resulting from injuries caused by the accident from trial time into the future but not from the time of the accident to the time of trial. We also find it is against the great weight and preponderance of the evidence that the jury did not award any damages for pain and suffering and medical expenses in the face of undisputed testimony. We have no choice but to reverse and remand for a new trial.