**EMPLOYERS CASUALTY COMPANY et al., Appellants,**

v.

**Joe FAMBRO, Appellee.**

No. 11–84–221–CV.

Court of Appeals of Texas, Eastland.

June 20, 1985.

Rehearing Denied Aug. 1, 1985.

Grant Liser, Brown, Herman, Scott, Dean & Miles, Fort Worth, for appellants.

Garry Lewellen & Martin L. Peterson, McMillan & Lewellen, Stephenville, for appellee.

OPINION

DICKENSON, Justice.

Joe Fambro is an individual who does business under the name of Fambro Pipe & Construction Co. He purchased a general liability insurance policy from Employers Casualty Company which was in effect on April 6, 1979, when one of Fambro's employees was operating a trenching machine which struck and damaged a large underground gas pipeline. When the owner of the gas pipeline sought recovery of its damages, Employers Casualty Company refused to accept responsibility for payment of the claim because of a policy exclusion. Fambro subsequently paid the judgment

which was taken against him for these damages.

Fambro has now secured a judgment for $205,576.68 from Employers Casualty Company and its employee, Freddy Cox, based upon the Deceptive Trade Practices-Consumer Protection Act.[1] Defendants appeal. We reverse and render.

The material issues, instructions and answers are set forth in full:

### SPECIAL ISSUE NO. 1

Do you find that Employers Casualty Company or Freddy Cox engaged in a false, misleading or deceptive act or practice on the occasion in question by failing to disclose to Joe Fambro prior to April 6, 1979, that the peril of striking or damaging a buried gas transmission pipeline was excluded from the general coverage provided by the insurance policies in question?

You are instructed that the term "false, misleading or deceptive acts or practices" means any act or series of acts which has the capacity or tendency to deceive an average or ordinary person, even though that person may have been ignorant, unthinking or credulous. Conduct may be "false, misleading or deceptive" even though it involves statements or representations that are literally true, if, when taken as a whole in light of the circumstances existing at the time it occurred, the conduct had the capacity or tendency to mislead. "False, misleading or deceptive" also includes the failure to disclose information to the consumer that could affect his decision to buy the goods or services, or that would cure a misunderstanding that could result either from statements or representations made or from other conduct.

Answer "we do" or "we do not" separately as to Employers Casualty Company and Freddy Cox.

ANSWER—Employers Casualty Company: <u>we do</u>

ANSWER—Freddy Cox: <u>we do</u>

### SPECIAL ISSUE NO. 2

Do you find that Employers Casualty Company or Freddy Cox represented that the insurance policy in question conferred or involved rights, remedies, or obligations which it did not have or involve?

Answer "we do" or "we do not" separately as to Employers Casualty Company and Freddy Cox.

ANSWER—Employers Casualty Company: <u>we do</u>

ANSWER—Freddy Cox: <u>we do</u>

If you have answered any part of Special Issues No. 1 or No. 2 "we do", then answer Special Issue No. 3; otherwise, do not answer Special Issue No. 3.

### SPECIAL ISSUE NO. 3

What sum of money, if any, if paid now in cash, do you find should be awarded to Joe Fambro as reasonable compensation for actual damages or economic loss suffered by him as a result of the conduct, if any, that you have found was engaged in by Employers Casualty Company or Freddy Cox?

Answer in Dollars and Cents [2]

ANSWER: $65,500.00

The jury also found in its answer to special issue four that Fambro discovered, or by the exercise of reasonable diligence should have discovered, more than two years prior to January 29, 1982 (the date suit was filed), that the insurance policy in question did not provide coverage for striking or damaging a buried gas transmission line. The trial court's judgment states that: "the jury's answer to special issue number four is disregarded as being immaterial as a matter of law."

Defendants have briefed nine points of error. In their first three points they ar-

---

1. See TEX.BUS. & COM.CODE ANN. art. 17.41 et seq. (Vernon Supp.1985). The 1979 amendments are not applicable to this lawsuit. We are dealing with the 1977 version of the Act.

2. The actual damages were automatically trebled under the 1977 version of the Act. Prejudgment interest in the sum of $9,076.68 was also awarded.

gue that the trial court erred in entering judgment for Fambro because the jury's answer to issue number four establishes that his claim for damages is barred by the two-year statute of limitations, TEX.REV. CIV.STAT.ANN. art. 5526 (amended 1979), under its provisions prior to the 1979 amendments. See Acts 1979, 66th Leg., Ch. 716, pp. 1768–1769, which moved "actions for debt" from the two-year statute to the four-year statute.

The Deceptive Trade Practices Act did not contain a specific statute of limitation until the 1979 amendment which added Sec. 17.56A creating a two-year statute of limitation for claims under the Act. The 1979 amendment specifically provided that it was to be applied prospectively only and that nothing in the amendatory act affects, either procedurally or substantively, a cause of action which arose in whole or in part prior to August 27, 1979. See Acts 1979, 66th Leg., Ch. 603, pp. 1327–1332.

■ Defendants rely upon *Marcotte v. American Motorists Insurance Co.*, 709 F.2d 378 (5th Cir.1983), which held that Texas would apply a two-year limitation period to claims for oral misrepresentations under the Deceptive Trade Practices Act which arose before August 27, 1979. We respectfully disagree. See *Gibbs v. Main Bank of Houston*, 666 S.W.2d 554 at 558 (Tex.App.—Houston [1st Dist.] 1984, no writ):

> The Deceptive Trade Practices Act, as amended effective August 27, 1979, provides for a two year limitation period for actions brought under the Act. However, Gibbs' claims are based on alleged violations of the Act occurring prior to the 1979 amendment, and the four year statute of limitation is therefore applicable.

Our case, like *Gibbs*, grew out of a written agreement and oral representations. The first three points of error are overruled.

In their next three points, defendants attack the jury's answer to issue one by arguing: (4) there is no evidence of probative force to support the finding of a false, misleading or deceptive act or practice; (5) the evidence is insufficient to support such a finding; and (6) the finding is so contrary to the great weight and preponderance of the evidence as to be clearly wrong. In like manner defendants use their final three points of error to challenge the jury's answer to special issue two by arguing: (7) there is no evidence of probative force to support the finding that defendants represented that the insurance policy conferred or involved rights, remedies or obligations which it did not have; (8) the evidence is insufficient to support such a finding; and (9) the finding is so contrary to the great weight and preponderance of the evidence as to be clearly wrong.

■ TEX.R.CIV.P. 324 was amended effective April 1, 1984, and the judgment in this case was signed on July 13, 1984. Since there was no motion for new trial, we must overrule points of error 5, 6, 8 and 9 because Rule 324 now states:

> (b) *Motion for New trial Required.* A point in a motion for new trial is a prerequisite to the following complaints on appeal:
>
> \*       \*       \*       \*       \*       \*
>
> (2) A complaint of factual insufficiency of the evidence to support a jury finding;
> (3) a complaint that a jury finding is against the overwhelming weight of the evidence.
>
> \*       \*       \*       \*       \*       \*

Points 4 and 7 will be reviewed in compliance with the test stated in *Martinez v. Delta Brands, Inc.*, 515 S.W.2d 263 at 265 (Tex.1974):

> When a party asserts that there is no evidence to support jury findings, we must review the evidence in its most favorable light, considering only the evidence and inferences which support the findings, and rejecting the evidence and inferences contrary to the findings.

■ Points 4 and 7 are sustained, for we find that there is no evidence to support the jury's findings on special issues one and two. Fambro and his wife both testified that Employers Casualty Company's

employees, Freddy Cox and his predecessor, told them that their insurance (which they bought in 1975 and renewed annually thereafter until the dispute over the 1979 accident) was "adequate" or "sufficient" for Fambro's business. Neither of them read any of the insurance policies which were delivered to them until this dispute arose. The facts in this case are not at all similar to the facts in *Royal Globe Insurance Company v. Bar Consultants, Inc.,* 577 S.W.2d 688 (Tex.1979), where the oral representations were that the policyholder would be "totally covered" from losses caused by vandalism even though the policy excluded vandalism from its coverage. The facts in this case are much more similar to those in *Parkins v. Texas Farmers Insurance Company,* 645 S.W.2d 775 (Tex. 1983), where the Supreme Court held there was "no evidence" that the insurance company misrepresented the terms of the insurance coverage, stating:

> Parkins (Fambro) nowhere shows that Farmers (Employers Casualty) ever assured him of coverage against fire (underground damage) loss under the circumstances present here or that they would issue a particular kind of policy.

The exclusion from coverage of loss from underground coverage was shown on each of the general liability insurance policies which Employers Casualty Company issued and delivered to Fambro. See *LaSara Grain Company v. First National Bank of Mercedes,* 673 S.W.2d 558 at 565 (Tex. 1984), where the Supreme Court found no evidence of a failure to disclose because written notice was sent on all transactions. The mere fact that Mr. & Mrs. Fambro relied upon Employers Casualty to advise them of their needs and believed they were covered for any type job they were going to do is no proof of a misrepresentation by Employers Casualty Company or of a deceptive act. If the oral representation of an opinion that their insurance was "adequate" or "sufficient" is enough to constitute a violation of the Deceptive Trade Practice Act, when subsequent events cause *an undiscussed exclusion* to make the coverage less than adequate or less

than sufficient, then the exposure of the insurance industry is virtually unlimited.

The judgment of the trial court is reversed, and we render judgment that Joe Fambro take nothing from Employers Casualty Company and Freddy Cox.