STATE FARM COUNTY MUTUAL
INSURANCE COMPANY OF
TEXAS, Appellant,

v.

Ciro MORAN, Appellee.

No. 13–90–028–CV.

Court of Appeals of Texas,
Corpus Christi.

May 2, 1991.

Roger Hughes, Craig Vittitoe, Adams & Graham, Harlingen, for appellant.

Ernesto Gamez, Brownsville, for appellee.

Before KENNEDY, BENAVIDES and DORSEY, JJ.

OPINION

KENNEDY, Justice.

Ciro Moran sued State Farm County Mutual Insurance Company of Texas under his insurance policy, under the DTPA, and for breach of the duty of good faith and fair dealing, in connection with the settlement of his claim for uninsured motorist benefits as a result of an automobile accident. Based upon a favorable jury verdict, the trial court awarded judgment for Moran against State Farm for $25,000.00 under the policy, $87,000.00 in mental anguish damages for breach of good faith, and $250,000.00 in punitive damages. State Farm brings twenty-one points of error. We reverse and remand.

Ciro Moran maintained a Texas Personal Automobile Insurance Policy with State Farm on his 1981 Chevrolet pickup truck. The policy included basic liability coverage, and coverage for personal injury protection and damages caused by uninsured/underinsured motorists. The sequence of events leading to the present suit began when the engine in Moran's truck exploded and the truck was taken to Ventura's Wrecker yard in Pharr, Texas, some 40 miles from Moran's home in Brownsville, Texas. Moran made a claim for damage to the engine, which a State Farm estimator denied under policy provisions excluding mechanical failure and ordinary wear and tear. The denial of this claim does not form the basis for any of the present causes of action, but merely sets the stage for subsequent occurrences.

When he learned of State Farm's denial of the claim and that he would be responsible for further storage charges if he left the truck at the wrecker yard, Moran asked his nephew, Guadalupe Rubio, to help tow his truck back from the wrecker yard. Rubio drove his uncle to the wrecker yard and attached a chain from his own truck to Moran's damaged truck. The two then headed back to Brownsville, with Moran sitting in his damaged truck in order to steer and brake. Along the highway, the tow chain got caught in the front axle of Moran's truck, causing it to come forward, veer to the left, strike Rubio's truck and then roll over.

Shortly after the accident, Texas Department of Public Safety troopers arrived on the scene. Rubio was given a field sobriety test and arrested for driving while intoxicated, and Moran was taken by ambulance to the hospital after he complained of some chest pain, where he was held for observation and released four days later.

Moran made a claim against State Farm under his policy for damages and medical bills resulting from the accident, and State Farm adjuster Audrey Taylor was assigned to investigate Moran's claim. However, since Taylor could not speak Spanish and Moran could not speak English, a Spanish-speaking State Farm adjuster contacted Moran and recorded a statement from him regarding the accident. Moran informed the adjuster that, in the process of being towed by his nephew Rubio, the tow chain somehow got caught on Moran's truck, which caused Moran's truck to overturn. Moran asked State Farm to cover him for the accident, and the adjuster told Moran to fill out an application for benefits.

Taylor then learned from the DPS report of the accident that Rubio was uninsured and that he had been intoxicated at the time of the accident, that the investigating officer believed that the accident had been caused by Moran's truck running over the chain and possibly the condition of the tires on Rubio's truck, and that Rubio's intoxication may have contributed to the accident.

After State Farm settled Moran's claim for property damage to his truck resulting from the accident, Moran then filed an ad-

ditional application for benefits, stating in his description of the accident that, while his truck was being pulled by Rubio on Highway 77 near Brownsville, "another car drove into our lane, my nephew was forced to make a sudden stop, and I steered my truck to the right, got caught in the chain, which caused my truck to turn and roll over." In addition, Moran's attorney, Ernesto Gamez, demanded $25,000, plus $2,500 in medical coverage, under the policy.

Taylor paid $2,461.00 for Moran's medical expenses under the $2,500.00 personal injury protection coverage provided by his policy, but informed Gamez that State Farm would need clarification of his demand for $25,000.00 under the policy. Gamez attempted to clarify his demand as a claim for bodily injury damages under the uninsured motorists provisions of the policy, by alleging that Rubio, an uninsured motorist, caused the accident, as follows: "Mr. Moran has stated to us that as Rubio was towing him another car entered their lane without signaling which forced Mr. Rubio to brake suddenly and caused him to lose control of his vehicle and right after caused the chain to wrap around Mr. Moran's tire. Furthermore, Lupino Rubio had tractor tires which also contributed to the accident."

Taylor, however, denied the claim on the grounds that either the third car or Moran's own negligence caused the accident by his failure to control the slack in the tow chain, or that Moran should be held responsible for choosing Rubio to tow his vehicle and assuming the risks of the method of towing that he chose.

Moran then filed suit against State Farm for the policy limits of $25,000, based on allegations that he sustained bodily injuries as a direct and proximate result of the negligence of Rubio in the operation of his uninsured motor vehicle, at a time when Moran was protected from such a risk by his State Farm policy. Moran also brought actions for State Farm's breach of its duty of good faith and fair dealing by denying the claim without any reasonable basis or a proper investigation of the claim, and for violation of the Texas Deceptive Trade Practices—Consumer Protection Act and the Insurance Code by engaging in false, misleading or deceptive acts, and in an unconscionable action or course of action.

The jury returned a verdict finding, among other things, that Rubio's negligence proximately caused the accident, and that Moran sustained substantial future damages as a result of the accident. The jury also found that State Farm knowingly breached its duty to deal fairly and in good faith in processing, investigating or handling Moran's claim, and under the DTPA that State Farm knowingly engaged in a false, misleading, or deceptive act or practice and in an unconscionable action or cause of action, and assessed damages accordingly under each theory. The trial court awarded judgment for Moran on the verdict on his policy claim and on his claim for breach of the duty of good faith and fair dealing, which afforded Moran a greater recovery than his DTPA claim.

■ By its thirteenth point of error State Farm complains that the jury's failure to find that Moran's own negligence was the proximate cause of the accident was without evidentiary support. In considering a "no evidence," "insufficient evidence," or "against the great weight and preponderance of the evidence" point of error, we will follow the well established tests set forth in *Pool v. Ford Motor Co.*, 715 S.W.2d 629 (Tex.1986); *Dyson v. Olin Corp.*, 692 S.W.2d 456 (Tex.1985); *Glover v. Texas General Indemnity Co.*, 619 S.W.2d 400 (Tex.1981); *Garza v. Alviar*, 395 S.W.2d 821 (Tex.1965); *Allied Finance Co. v. Garza*, 626 S.W.2d 120 (Tex.App.—Corpus Christi 1981, writ ref'd n.r.e.); and Calvert, *No Evidence and Insufficient Evidence Points of Error*, 38 Texas L.Rev. 361 (1960).

State Farm contends that the evidence showed conclusively, or at least overwhelmingly, that Moran himself was negligent either in the method he chose to tow his truck or by entrusting Rubio to tow his truck while Rubio was obviously intoxicated. State Farm points to evidence of Moran's inexperience in using a tow chain, and

the testimony of other witnesses, attendants at the wrecker yard and the officer investigating the accident who had been in contact with Rubio close to the time of the accident, concerning the degree of Rubio's intoxication, and that it was noticeable by the smell of his breath.

From a review of the entire record, however, we find that the jury had before it sufficient evidence from which to conclude that Rubio's negligence, not Moran's, was the sole proximate cause of the accident. According to Moran, it was Rubio's suggestion that they tow his truck back from the wrecker and Rubio attached the tow chain between the two vehicles. According to both Rubio and Moran, Rubio successfully concealed from Moran his intoxication or any evidence that he had been drinking beer. In addition, Rubio testified that he was completely at fault for the accident; when another car passed him on the highway, he took his foot off the gas and slowed down, allowing slack to develop in the tow chain, which caused the accident. Moran testified that he kept the tow chain tight until Rubio began swerving back and forth on the highway, which developed slack in the tow chain and caused the accident. We hold that it was not proved either as a matter of law or by the great weight and preponderance of the evidence that Moran's negligence was the proximate cause of the accident. *See Sterner v. Marathon Oil Co.*, 767 S.W.2d 686 (Tex.1989); *Rodriguez v. Universal Fastenings Corp.*, 777 S.W.2d 513 (Tex.App.—Corpus Christi 1989, no writ). Appellant's thirteenth point of error is overruled.

By its tenth and eleventh points of error State Farm challenges the legal and factual sufficiency of the evidence to show that there was no reasonable basis to deny Moran's claim and that State Farm, based on its duty to investigate, should have known that there was no reasonable basis for denial or delay.

The Texas Supreme Court has recognized that an insurer has a duty to deal fairly and in good faith with its insured in the processing and payment of claims. *Aranda v. Insurance Co. of North America*, 748 S.W.2d 210 (Tex.1988); *Arnold v. National County Mutual Fire Insurance Co.*, 725 S.W.2d 165 (Tex.1987). This duty arises out of the special trust relationship between the insured and the insurer, and is imposed on the insurer because of the disparity of bargaining power and the exclusive control that the insurer exercises over the processing of claims. *Aranda*, 748 S.W.2d at 212; *Arnold*, 725 S.W.2d at 167.

*Aranda* indicated that in order to prevail on a breach of good faith claim, the insured must establish as elements of his cause of action: (1) the absence of a reasonable basis for denying or delaying payment of the benefits of the policy *and* (2) that the carrier knew or should have known that there was not a reasonable basis for denying the claim or delaying payment of the claim. *Id.* at 213.[1] *Aranda* further explained that:

> The first element of this test requires an objective determination of whether a reasonable insurer under similar circumstances would have delayed or denied the claimant's benefits. The second element balances the right of an insurer to reject an invalid claim and the duty of the carrier to investigate and pay compensable claims.

*Id.* at 213. *Aranda* further stated that, "[u]nder the test, carriers will maintain the right to deny invalid or questionable claims and will not be subject to liability for an erroneous denial of a claim." *Id.* at 213. In *Vail v. Texas Farm Bureau Mutual Insurance Co.*, 754 S.W.2d 129 (Tex.1988), the Texas Supreme Court summarized *Aranda's* holding as establishing breach when the insurer fails "to promptly and equitably pay an insured's claim when liability becomes reasonably clear." *Vail*, 754 S.W.2d at 135.

1. We note that, in the present case, the trial court in its definition of what constitutes a breach of the duty of good faith and fair dealing failed to set out the *Aranda* elements and instead required a finding of *either* no reasonable basis *or* failure to investigate the basis for denial. Nevertheless, State Farm failed to object to the disjunctive nature of the submission of these elements.

Under the second element, the "special relationship" between the insured and insurer imposes on the insurer a duty to investigate claims thoroughly and in good faith, and to deny those claims only after an investigation reveals that there is a reasonable basis to do so. *Viles v. Security National Insurance Co.*, 788 S.W.2d 566, 567 (Tex.1990). In addition, whether there is a reasonable basis for denial must be judged by the facts before the insurer at the time the claim was denied. *Id.* at 567.

In the present case, viewed in the light most favorable to Moran, the evidence at trial shows that Rubio's negligent operation of his truck caused slack to develop in the tow chain, which in turn caused the chain to wrap around Moran's wheel causing the accident. The two direct witnesses to the accident were Rubio and Moran. As we mentioned in our discussion of State Farm's thirteenth point of error, both testified at trial that the accident occurred as a result of Rubio's negligence, although each account of the accident differs slightly. In addition, the DPS investigating officer testified that it was his opinion that a combination of Rubio's intoxication and the unsafe condition of the tractor tires on his truck caused the accident.

Had State Farm then interviewed Rubio and Moran after it became aware that Moran was claiming that Rubio's negligence caused the accident, the evidence shows that it would have discovered that both witnesses to the accident attributed blame to Rubio for causing the accident. We find that there was legally and factually sufficient evidence to show that State Farm breached its duty of good faith and fair dealing by its denial of Moran's claim without making a sufficient attempt to conduct a thorough investigation which would have revealed that no reasonable basis existed to deny or delay payment of the claim. We overrule points ten and eleven.

By its first three points of error State Farm complains of the jury's findings of damages flowing from the physical injuries to Moran as a result of the accident. By Jury Question No. 4, the jury assessed damages to Moran due to the accident at $-0- for past pain and mental anguish, past physical impairment, and past medical expenses up until the time of trial, but assessed $50,000 for future pain and mental anguish, $75,000 for future physical impairment, and $175,000 for future medical expenses. By Jury Question No. 15, the jury then assessed actual damages to Moran at $25,000 for State Farm's wrongful denial of his uninsured motorist policy claim.

Specifically, by its third point, State Farm challenges the legal and factual sufficiency of the evidence to support both the jury's finding of future damages to Moran from the accident and the corresponding award of the $25,000 policy limit for wrongful denial of the claim. A short review of the medical testimony is in order here. Several medical doctors and a chiropractor testified to their impression of Moran's condition before and after the accident.

Dr. Shereef Hilmy, a Harlingen cardiologist, examined Moran at the emergency room immediately after the accident because of the emergency room physician's concern that Moran had sustained injury to his heart. Hilmy's impression was that Moran had chest trauma, or injury to the chest, but that Moran did not sustain damage to his heart from the accident. Dr. Edward McGlynn, Moran's treating cardiologist for many years after Moran had a heart attack in 1977, agreed that the accident did not contribute to Moran's coronary heart disease, and deferred to Dr. Hilmy's judgment whether Moran sustained any injury to his heart as a result of the accident.

Dr. Enrique Trapp, a Brownsville internist, diagnosed Moran as suffering from traumatic arthritis, based on the trauma to Moran's right shoulder sustained in the accident. Trapp had treated Moran since 1978 and had prescribed anti-inflammatory and pain medication for Moran in late 1986 and early 1987 for complaints of pain and limitation of motion in his neck and lower back, in which it was Trapp's impression that Moran had significant arthritic changes, or degenerative arthritis, prior to the accident. However, Trapp never diag-

nosed traumatic arthritis to his right shoulder before the accident.

Dr. B.N. Laksmikanth, a Brownsville orthopedic surgeon, testified that he had been seeing Moran since July of 1989 for pain in the neck and right shoulder, which was probably either muscular or ligamentous in nature, though it also could be caused by degenerative arthritis in Moran's neck. Laksmikanth testified that degenerative arthritis can gradually become worse, without any additional trauma.

Dr. Ray Strong, a Brownsville chiropractor who began to treat Moran shortly after the accident, diagnosed him as having three subluxations, or misalignments, of the vertebrae in his back. Strong testified that most subluxations are caused by trauma, or blows, and that in Moran's case, Strong believed that the accident aggravated a prior arthritic condition of the vertebrae and made it much worse by breaking calcium deposits on the vertebrae in Moran's neck and thereby causing the subluxations. This condition caused by the accident and the preexisting arthritis limit Moran's movement and cause him pain. Strong testified that he believes Moran's condition is permanent, and that he will have physical impairment and pain for the rest of his life, and Strong recommended that, in order to get periodic temporary relief from this condition, Moran should visit a chiropractor twice a week for the rest of his life.

Moran testified that he had a heart attack in 1977, but that he could still function normally around his house and take care of his farm and farm animals until the time of the accident. After the accident, however, Moran describes himself as physically disabled. Moran testified that he cannot do anything around the house or farm for himself and that he had to hire someone to take care of his chores, that he cannot sleep at night because of pain and that he wakes up in the morning with back pain, all of which he did not have before the accident. Moran's wife also testified that, since the accident, Moran has not been able to work around the house or on the couple's ranch like he did before, and he has pain in his back, shoulders and neck, which prevents him from sleeping well at night.

We find sufficient evidence to show future damages in excess of the policy limits. Drs. Strong and Trapp both testified that the trauma of the accident would, either by itself or in conjunction with the preexisting arthritic condition, cause Moran to suffer significant pain, disablement and future medical bills. In addition, Moran himself and his wife both testified to the degree of pain and impairment he suffered after the accident as opposed to before. This was sufficient to show that Moran suffered future damages at least in excess of the $25,000 policy limits in question. Appellant's third point of error is overruled.

■ By its first point of error, State Farm complains that the jury's findings of no past damages is inconsistent and materially conflicts with its findings of significant future damages and the wrongful dishonor of such damages by the insurer.

■ In reviewing the jury findings for conflict, the threshold question is whether the findings are about the same material fact. A court may not strike down jury answers on the ground of conflict if there is any reasonable basis upon which they can be reconciled. *Bender v. Southern Pacific Transportation Co.,* 600 S.W.2d 257, 260 (Tex.1980); *Little Rock Manufacturing Co. v. Dunn,* 222 S.W.2d 985, 989 (Tex.1949). In the case of an alleged conflict, the reviewing court must consider each of the answers claimed to be in conflict and, disregarding the allegedly conflicting answer, but taking into consideration all of the rest of the verdict, if one of the answers would require a judgment in favor of the plaintiff and the other would require a judgment in favor of the defendant, then the answers are fatally in conflict. *Little Rock Manufacturing Co.,* 222 S.W.2d at 991, *qualified by Bradford v. Arhelger,* 161 Tex. 427, 340 S.W.2d 772 (1960).

In *Kelley v. Atlantic Gulf Stevedores, Inc.,* 681 S.W.2d 275, 278–79 (Tex.App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.), a suit for personal injuries arising out of an automobile accident, the Houston court

held that the jury's finding of lost future wages of $20,000 fatally conflicted with its finding of no lost past wages, where under the circumstances it was clearly inconsistent for the jury to deny damages for the loss of past wages after granting damages for the expected loss of future wages. *Cf. Alarcon v. Circe,* 704 S.W.2d 520 (Tex.App.—Corpus Christi 1986, no writ); *Gallegos v. Clegg,* 417 S.W.2d 347, 356–57 (Tex.Civ. App.—Corpus Christi 1967, writ ref'd n.r.e.) (generally inconsistent for the jury to find damages for medical treatments for injuries ordinarily and reasonably accompanied by pain but award nothing for pain and suffering).

Similarly, in the present case, we hold that the jury's finding of no past physical injury damages fatally conflicts with its finding of future physical injury damages. We acknowledge that, in the abstract, such damages are not always inconsistent; it would be possible for the victim of some accident to sustain a present injury that would not manifest itself in the form of pain, impairment or medical expenses until some uncertain future date. The facts of the present case, however, do not suggest such an injury. If there is any injury, then it has already caused Moran significant pain, impairment and expense; there is nothing to suggest that future pain, impairment and expense, if any, would be greater or materially different from what Moran allegedly is presently experiencing. There is thus no evidence to suggest that Moran will suffer any such damages in the future that he has not already suffered up to the time of trial. Therefore, the finding of no past damages, disregarding the future damages award, would have required a judgment for defendant; whereas the finding of future damages, disregarding the finding of no past damages, would require a judgment for plaintiff. We sustain appellant's first point of error.

■ By its second point of error, State Farm contends that the jury's finding of no past damages constituted a finding of no injury or damages from the accident, and that the trial court therefore should have disregarded the future damages findings. As we stated in our discussion of appellant's first point, however, the jury's findings of no past damages are in fatal conflict with its findings of future damages, which requires that both sets of findings be set side and that the case be remanded for new trial. *See Bradford,* 340 S.W.2d at 774; *Kelley,* 681 S.W.2d at 278–79. Appellant's second point of error is overruled.

■ By its twentieth and twenty-first points of error State Farm challenges the legal and factual sufficiency of the evidence to support the jury's findings on Moran's alternate theories of recovery under the DTPA.[2] Specifically, by point twenty State Farm complains that there was no evidence to show that it knowingly engaged in a false, misleading, or deceptive act or practice which was a producing cause of actual damages to Moran, by representing that its policy conferred rights, remedies or obligations which it did not, in violation of Tex.Bus. & Com.Code Ann. § 17.46(b) (Vernon 1987). By point twenty-one State Farm complains that there was no evidence to show that it knowingly engaged in an unconscionable action or cause of action which was a producing cause of damages to Moran, in violation of Tex.Bus. & Com.Code Ann. § 17.50(a)(3) (Vernon 1987). Both of these DTPA claims are based on Moran's allegation that, when he initially purchased the insurance policy, State Farm misrepresented that he had "full coverage," when he in fact did not.

■ Absent some specific misrepresentation of its terms of coverage by the insurer, the insured's mistaken belief that he is obtaining coverage under certain contingencies which are not in fact covered under an insurance policy is not generally

2. Although the trial court granted judgment based on Moran's claim for breach of the duty of good faith and fair dealing, State Farm challenges the findings on DTPA violations so that alternate relief will not be granted on those grounds. Otherwise, Moran may be entitled to judgment on his DTPA theories even though the greater award on his breach of good faith theory was reversed on appeal. *See Boyce Iron Works, Inc. v. Southwestern Bell Telephone Co.,* 747 S.W.2d 785 (Tex.1988).

grounds for a DTPA claim against the insurer. *See Parkins v. Texas Farmers Insurance Co.*, 645 S.W.2d 775 (Tex.1983); *Employers Casualty Co. v. Fambro*, 694 S.W.2d 449 (Tex.App.—Eastland 1985, writ ref'd n.r.e.); *Bitter v. Associated Indemnity Corp.*, 612 S.W.2d 715 (Tex.Civ.App.—Corpus Christi 1981, no writ); *cf. Royal Globe Insurance Co. v. Bar Consultants, Inc.*, 577 S.W.2d 688 (Tex.1979) (specific pre-sale misrepresentation that policy covered all losses caused by vandalism). General claims by the insurer of the adequacy or sufficiency of coverage, for instance, are not generally actionable under the DTPA. *Fambro*, 694 S.W.2d at 452.

In the present case, there is no evidence to suggest that State Farm made any misrepresentations to Moran when he purchased the policy. State Farm simply represented the policy to be "full coverage," a term of art within the insurance industry to describe a certain level of automobile insurance coverage. The evidence does not show that State Farm misrepresented what it meant by full coverage or that Moran received anything less than a full coverage policy. There is thus no evidence to support Moran's alternate theories of recovery under the DTPA. Appellant's twentieth and twenty-first points of error are sustained.

The remainder of its points are not dispositive and we do not address them. *See* Tex.R.App.P. 90(a). We REVERSE the judgment of the trial court and REMAND this case to the trial court for disposition consistent with this opinion.

BENAVIDES, J., not participating.