Miguel ARANDA, Petitioner,

v.

INSURANCE CO. OF NORTH
AMERICA, et al.,
Respondents.

No. C-6216.

Supreme Court of Texas.

March 23, 1988.

Rehearing Denied April 27, 1988.

Michael B. Charlton, Karen A. Lerner, Houston, for petitioner.

Joe L. Guyton, Mark Wham, Weitinger, Steelhammer & Tucker, Kurt Groten, Funderburk & Funderburk, Houston, Royal H. Brin, Jr., Strasburger & Price, Dallas, for respondents.

SPEARS, Justice.

The issue in this case is whether a workers' compensation claimant is entitled to seek damages for the insurance carrier's breach of a duty of good faith and fair dealing. Petitioner Miguel Aranda became unable to work and filed a claim against each of his two employers. He later sued Respondents, Insurance Company of North America (INA) and Lumbermans Mutual Casualty Company (Lumbermans), the compensation carriers for the two employers. He alleged that the carriers had breached the duty of good faith and fair dealing by failing to pay promptly his claim for workers' compensation benefits. The trial court dismissed the case for failure to state a cause of action. The court of appeals affirmed the judgment of the trial court. 722 S.W.2d 755. We reverse the judgment of the court of appeals and remand the cause to the trial court for further proceedings.

Miguel Aranda began to experience the first symptoms of a repetitious traumatic injury on March 15, 1982. On March 26, 1982, he became unable to work. At that time, he was employed by both AMF Tuboscope and Uni–Mineral. INA carried a policy of workers' compensation on AMF Tuboscope, and Lumbermans carried a policy of workers' compensation on Uni–Mineral. Aranda filed a claim for workers' compensation benefits, naming both employers and both compensation carriers. INA and Lumbermans investigated the claim and determined that Aranda was employed by both AMF Tuboscope and Uni–Mineral; that his injuries were the result of his work at either or both of his employers; and that his injuries were compensable. INA and Lumbermans, however, were unable to agree between themselves as to which carrier bore primary responsibility. Consequently, each carrier refused to pay weekly disability benefits or medical expenses until the claim could be resolved by the Industrial Accident Board.

Aranda brought suit against INA and Lumbermans alleging that both carriers had breached their duty of good faith and fair dealing by failing to settle his claim promptly and equitably when the liability of each carrier was clear. He also claimed intentional misconduct on the part of both carriers. INA and Lumbermans filed special exceptions, asserting that Aranda's allegations that the carriers had breached the duty of good faith and fair dealing failed to state a cause of action. They also contended that Aranda's causes of action for intentional misconduct were barred by the exclusivity provision of the Workers' Compensation Act, Tex.Rev.Civ.Stat.Ann. art. 8306 et seq. (Vernon 1967). The trial court sustained the special exceptions and dismissed the cause after Aranda failed to amend his pleadings.

The court of appeals affirmed the trial court's judgment, holding that the allegations that INA and Lumbermans had breached the common law duty of good faith and fair dealing did not state a cause of action. The court of appeals also held that Aranda's causes of action for intentional misconduct were barred because the remedies available to an injured worker are limited to those expressly enumerated in the Workers' Compensation Act.

### The Duty of Good Faith and Fair Dealing

It is well established under Texas law that "accompanying every contract is a common law duty to perform with care, skill, reasonable expedience and faithfulness the thing agreed to be done, and a negligent failure to observe any of these conditions is a *tort* as well as a breach of contract." *Montgomery Ward & Co. v. Scharrenbeck*, 146 Tex. 153, 157, 204 S.W. 2d 508, 510 (1947) (emphasis added). The same duty of care and faithfulness that arises under common law contracts applies equally to insurance contracts. *Burroughs v. Bunch*, 210 S.W.2d 211, 214–15 (Tex.Civ. App.—El Paso 1948, writ ref'd); *American Standard Life Ins. Co. v. Redford*, 337 S.W.2d 230, 231 (Tex.Civ.App.—Austin 1960, writ ref'd n.r.e.).

Specifically, this court has recognized the duty of an insurer to deal fairly and in good faith with its insured in the processing and payment of claims. *Arnold v. National County Mutual Fire Ins. Co.*, 725 S.W.2d 165, 167 (Tex.1987); *English v. Fischer*, 660 S.W.2d 521, 524 (Tex.1983) (Spears, J., concurring). This duty of good faith and fair dealing arises out of the special trust relationship between the insured and the insurer. As this court stated in *Arnold:*

> In the insurance context a special relationship arises out of the parties' unequal bargaining power and the nature of the insurance contracts which would allow unscrupulous insurers to take advantage of their insured's misfortunes in bargaining for settlement or resolution of the claims....

*Id.* The duty of good faith and fair dealing is thus imposed on the insurer because of the disparity of bargaining power and the exclusive control that the insurer exercises over the processing of claims.

The Workers' Compensation Act sets forth a compensation scheme that is based on a three-party agreement entered into by the employer, the employee, and the compensation carrier. *Southern Casualty Co. v. Morgan*, 12 S.W.2d 200, 201 (Tex. Comm'n App. 1929, judgm't adopted). The constitutionality of the Workers' Compensation Act rests on the contractual nature of this agreement. *Id.; Huffman v. Southern Underwriters*, 133 Tex. 354, 359, 128 S.W.2d 4, 6 (1939). As between the compensation carrier and the employee, there is a promise for a promise: the carrier agrees to compensate the employee for injuries sustained in the course of employment, and the employee agrees to relinquish his common law rights against his employer. *Southern Casualty Co.*, 12 S.W.2d at 201. The employee is thus a party to the contract and therefore entitled to recover in that capacity.

The contract between a compensation carrier and an employee creates the same type of special relationship that arises under other insurance contracts. The purpose of the Workers' Compensation Act is to provide speedy, equitable relief to an employee injured in the course of his employment. *Texas Employers' Insurance Ass'n v. Wright*, 128 Tex. 242, 97 S.W.2d 171, 172 (1936). The injured employee, from the date of his disability, relies on the compensation carrier for weekly disability benefits and payment of medical expenses. He is dependent on the carrier for protection from the economic calamity of disabling injuries. An arbitrary decision by the carrier to refuse to pay a valid claim or to delay payment leaves the injured employee with no immediate recourse. Contrary to the contentions of INA and Lumbermans, the mechanisms provided by the Workers' Compensation Act do not afford immediate relief to the injured employee who is denied compensation. While the Industrial Accident Board may ultimately rectify the carrier's unreasonable failure to pay benefits for compensable injuries, the injured employee may in the interim incur substantial damages because of an inability to meet basic living expenses or pay for medical care. The existence of the Industrial Accident Board does not negate the special trust relationship between the carrier and the insured.

We, therefore, hold that there is a duty on the part of workers' compensation carriers to deal fairly and in good faith with

injured employees in the processing of compensation claims. Accordingly, we disapprove of those appellate decisions that reject such a duty, *Fidelity & Casualty Co. of New York v. Shubert*, 646 S.W.2d 270 (Tex.App.—Tyler 1983, writ ref'd n.r.e.) and *Cantu v. Western Fire & Casualty Ins. Co., Ltd.*, 716 S.W.2d 737 (Tex.App.—Corpus Christi 1986), writ ref'd n.r.e. per curiam, 723 S.W.2d 668 (Tex.1987).

■ The next issue to be addressed is the standard of care that applies to claims that the compensation carrier breached its duty of good faith and fair dealing. A workers' compensation claimant who asserts that a carrier has breached the duty of good faith and fair dealing by refusing to pay or delaying payment of a claim must establish (1) the absence of a reasonable basis for denying or delaying payment of the benefits of the policy *and* (2) that the carrier knew or should have known that there was not a reasonable basis for denying the claim or delaying payment of the claim. *See Travelers Ins. Co. v. Savio*, 706 P.2d 1258, 1272 (Colo.1985); *Anderson v. Continental Ins. Co.*, 85 Wis.2d 675, 271 N.W.2d 368, 376 (1978). *See also* Comment, *Bad Faith Claims Practices in Texas—Do They Exist?: Extending a Bad Faith Cause of Action to Texas Workers' Compensation Insurance Claimants*, 16 St. Mary's L.J. 679, 701–03 (1985). The first element of this test requires an objective determination of whether a reasonable insurer under similar circumstances would have delayed or denied the claimant's benefits. The second element balances the right of an insurer to reject an invalid claim and the duty of the carrier to investigate and pay compensable claims. This element will be met by establishing that the carrier actually knew there was no reasonable basis to deny the claim or delay payment, or by establishing that the carrier, based on its duty to investigate, should have known that there was no reasonable basis for denial or delay. Under the test, carriers will maintain the right to deny invalid or questionable claims and will not be subject to liability for an erroneous denial of a claim. Carriers that breach the duty of good faith

and fair dealing, however, will be subject to liability for their tortious conduct.

The trial court's action in sustaining the carriers' special exceptions to Aranda's cause of action for breach of the duty of good faith and fair dealing was tantamount to a dismissal of Aranda's cause of action. In reviewing the trial court's action, as affirmed by the court of appeals, we accept as true all of the factual allegations set forth in Aranda's pleadings. *Jones v. Sun Oil Co.*, 137 Tex. 353, 356, 153 S.W.2d 571, 573 (1941). A review of Aranda's pleadings reveals that there is a factual basis to support his claim that the carriers breached the duty of good faith and fair dealing.

■ Aranda alleged that he suffered from a repetitious traumatic injury. To recover workers' compensation benefits, he was required to prove causation by activities occurring on a job; he was not required to prove that the injury was caused by an event occurring at a definite time and place. *Davis v. Employers Ins. of Wausau*, 694 S.W.2d 105, 107 (Tex.App.—Houston [14th Dist.] 1985, writ ref'd n.r.e.); *Standard Fire Ins. Co. v. Ratcliff*, 537 S.W.2d 355, 360 (Tex.Civ.App.—Waco 1976, no writ). Upon proof that job-related activity caused the injury, the insurer carrying the compensation policy on the date that the disability occurred is required to pay compensation benefits. Tex.Rev.Civ.Stat. Ann. art. 8306, § 20 (Vernon Supp.1988). In his pleadings, Aranda alleged that he proved he was employed by both AMF Tuboscope and Uni–Mineral on March 26, 1980, the date of disability. He further alleged that he provided proof of the causal connection to work by presenting both carriers with the report of Dr. William Donovan which indicated that Aranda's condition, carpal tunnel syndrome, resulted from his work. Under these facts, INA and Lumbermans were each fully liable to Aranda for compensation benefits. These allegations provide a sufficient factual basis for a claim that neither INA nor Lumbermans had a reasonable basis for refusing to pay Aranda's compensable claim.

Aranda further alleged that the adjusters employed by INA and Lumbermans

determined that Aranda's claim was compensable and advised the carriers to pay the claim. He also alleged that the supervisory personnel for each carrier, with actual knowledge of Aranda's employment with both companies and actual knowledge that his injury originated out of his employment, made the conscious decision not to pay the claim. These allegations present a factual basis to support a claim that the carriers knew there was no reasonable basis for denying benefits to Aranda.

### Exclusivity Provision

■ The next issue is whether a cause of action against a carrier for breach of the duty of good faith and fair dealing or for an intentional tort is precluded by the exclusivity provision of the Workers' Compensation Act (the Act). INA and Lumbermans contend that the Act provides the exclusive remedies for injured employees and, therefore, precludes any cause of action against a carrier for bad faith or intentional misconduct in the processing of compensation claims. The Workers' Compensation Act provides a compensation scheme for *"personal injuries sustained by an employee in the course of his employment."* Tex.Rev.Civ.Stat.Ann. art. 8306, § 1 (Vernon 1967) (emphasis added). The exclusivity provision of the Act states:

> The employees of a subscriber and the parents of minor employees shall have no right of action against their employer or against any agent, servant or employer of said employer for *damages for personal injuries....*

Tex.Rev.Civ.Stat.Ann. art. 8306, § 3 (Vernon Supp.1988) (emphasis added). The Act thus provides that the remedies afforded by the statute are exclusive only if the injury complained of is an injury contemplated by the Act—a personal injury sustained in the course of employment. The Act was not intended to shield compensation carriers from the entire field of tort law. *Reed Tool Co. v. Copelin*, 610 S.W.2d 736, 739 (Tex.1980). The exclusivity provision thus cannot be read as a bar to a claim that is not based on a job-related injury.

■ Liability as a result of a carrier's breach of the duty of good faith and fair dealing or intentional misconduct in the processing of a compensation claim is distinct from the liability for the injury arising in the course of employment. Injury from the carrier's conduct arises out of the contractual relationship between the carrier and the employee and is sustained after the job-related injury. *Savio*, 706 P.2d at 1265. This court has recognized that an employee may have one claim against his employer under the Act and another claim at common law for an intentional tort. *Massey v. Armco Steel Co.*, 652 S.W.2d 932, 933 (Tex. 1983), *rev'g* 635 S.W.2d 596 (Tex.App.— Houston [14th Dist.] 1982).

Accordingly, we hold that the exclusivity provision of the Workers' Compensation Act does not bar a claim against a carrier for breach of the duty of good faith and fair dealing or intentional misconduct in the processing of a compensation claim. A claimant is permitted to recover when he shows that the carrier's breach of the duty of good faith and fair dealing or the carrier's intentional act is separate from the compensation claim and produced an independent injury. *Massey*, 652 S.W.2d at 933.

Aranda's pleadings reveal that he alleged both a breach of the duty of good faith and fair dealing and intentional torts by INA and Lumbermans that are separate from his compensation claim for his work-related disability. He further alleged damages from the carriers' failure to pay compensation benefits: losses to credit, reputation, and the ability to maintain a job when his credit was a matter of consideration for his employer. Thus, Aranda has pleaded a sufficient factual basis to enable him to go forward on these claims.

### The Penalty Provisions

■ INA and Lumbermans also assert that the penalty provisions of the Workers' Compensation Act preclude the imposition of separate tort duties on compensation carriers. Of the penalty provisions cited by the carriers, however, only two provide direct benefits to claimants. Under article

8306, § 18a, a carrier is subject to a 15% penalty if the carrier fails to pay benefits or file a notice of controversion within twenty days of receiving notice of the claim. Under article 8307, § 5a, a 12% penalty and attorney's fees may be imposed as a sanction against a carrier who fails to pay promptly the proceeds of a settlement, IAB award, or agreed judgment. Neither provision affords relief to the claimant when a carrier breaches the duty of good faith and fair dealing by refusing to pay benefits for a compensable claim until ordered to do so by the Industrial Accident Board. Even if these provisions addressed such misconduct, the Act does not contemplate that the failure of a carrier to act in good faith or the carrier's intentional tort can be meaningfully redressed by the mere addition of 12% or 15% to the past due compensation. Such nominal penalties are of questionable value as an incentive for the carrier to act reasonably in processing an employee's claim. *See Martin v. Traveler's Ins. Co.,* 497 F.2d 329, 331 (1st Cir.1974) (applying Maine law); *Coleman v. American Universal Ins. Co.,* 86 Wis.2d 615, 273 N.W.2d 220, 224 (1979).

In summary, we hold that compensation carriers are subject to a duty of good faith and fair dealing in the processing of compensation claims. A worker's claim against the carrier for breach of the duty of good faith and fair dealing or intentional misconduct in the processing of claims is not precluded by the exclusivity provision or the penalty provisions of the Workers' Compensation Act. A cause of action for breach of the duty of good faith and fair dealing is stated against a carrier when it is alleged that:

(1) there is not a reasonable basis for denying the benefits;

(2) the carrier knew or should have known that there was not a reasonable basis for denying the claim or delaying payment of the claim;

(3) the carrier's lack of good faith, separate and independent from the original job-related injury, proximately caused damages; and

(4) the employee sustained damages as result of the carrier's action.

As this court recognized in *Arnold,* ordinary tort damages, including exemplary damages, are recoverable for a breach of the duty of good faith and fair dealing upon a showing of the same elements that permit a recovery of those damages in other tort actions. 725 S.W.2d at 168.

The judgment of the court of appeals is reversed and the cause is remanded to the trial court for further proceedings.

PHILLIPS, C.J., files a dissenting opinion in which CULVER, J., joins.

WALLACE, J., files a dissenting opinion in which GONZALEZ, J., joins.

PHILLIPS, Chief Justice, dissenting.

I respectfully dissent. The Texas Workers Compensation Act replaces common law remedies with a comprehensive statutory scheme for the processing and adjudication of work-related injuries. I do not believe the unique statutory relationships it creates can give rise to an implied duty of good faith and fair dealing on the part of the carrier. Therefore, I would affirm the judgment of the court of appeals.

Contrary to the majority's apparent assertion, this court has never held that every contract contains an implied duty of good faith and fair dealing. In fact, we specifically rejected this proposition in *English v. Fischer,* 660 S.W.2d 521, 522 (Tex.1983). We have, however, read a duty of good faith and fair dealing into certain types of contractual transactions where the partners are in special relationships. Those relationships arise either "from the element of trust necessary to accomplish the goals of the undertaking or ... because of an imbalance of bargaining power" between the parties. *Id.* at 524 (Spears, J. concurring). *See, e.g., Montgomery Ward Co. v. Scharrenbeck,* 146 Tex. 153, 157, 204 S.W.2d 508, 510 (1947) (duty to exercise proper care in the performance of a service contract); *Stowers Furniture Co. v. American Indemnity Co.,* 15 S.W.2d 544 (Tex.Comm'n App. 1929, opinion adopted) (insurance company's duty

to exercise good faith in attempting settlement). Such duties are especially common where the parties are already in a fiduciary relationship. *See, e.g., Johnson v. Peckham,* 132 Tex. 148, 152, 120 S.W.2d 786, 788 (1938) (partner's obligation to exercise high duty in dealings with other partners); *Fitz–Gerald v. Hull,* 150 Tex. 39, 54, 237 S.W.2d 256, 264 (1951) (joint adventurer's duty to deal with each other with "utmost good faith"); *Kinzbach Tool Co. v. Corbett–Wallace Corp.,* 138 Tex. 565, 573, 160 S.W.2d 509, 513 (1942) (agent's duty to exercise "fair dealing and good faith" in all transactions on his principal's behalf).

Most recently, this court has found a duty on the part of insurers to deal fairly and in good faith with their insureds. *Arnold v. National County Mut. Fire Ins. Co.,* 725 S.W.2d 165 (Tex.1987). In examining the relationship between the parties, we said:

> In the insurance context a special relationship arises out of the parties' unequal bargaining power and the nature of insurance contracts which would allow unscrupulous insurers to take advantage of their insureds' misfortunes in bargaining for settlement or resolution of claims. In addition, without such a cause of action, insurers can abritrarily deny coverage and delay payment of a claim with no more penalty than interest on the amount owed. An insurance company has exclusive control over the evaluation, processing and denial of claims.

725 S.W.2d at 167. None of the factors which governed these cases, however, is present here.

The Workers' Compensation Act is theoretically premised on a three-party contractual agreement between the employer, the employee and the compensation carrier. *Huffman v. Southern Underwriters,* 133 Tex. 354, 359, 128 S.W.2d 4, 6 (1939). Such a contractual agreement, of course, is essentially a legal fiction. The actual terms of the contract between the worker, the employer and the insurance carrier are wholly dictated by statute. The rights and obligations of the different parties are not determined by any actual negotiation between the parties, but rather by the terms of the statute itself. *See Florida Erection Services, Inc. v. McDonald,* 395 So.2d 203, 209 (Fla.App.1981). Whatever bargaining there is over terms and remedies for breach occurs in the Legislature.

In enacting the statute, the Legislature has expressly addressed each of the concerns identified in *Arnold.* The Workers' Compensation Act provides that within 20 days of receipt of a claimant's written notice of injury, the carrier must either initiate compensation payments or file a statement of controversion with the Industrial Accident Board. Tex.Rev.Civ.Stat. art. 8306 § 18a(a). If the insurer files a statement of controversion, the Board must promptly set the matter for a prehearing conference on the merits. If a carrier neither initiates compensation nor files a statement of controversion, it is subject to a penalty of 15% of the past due payments to be paid to the claimant. *Id.*

If a claimant is suffering financially, he or she may file an affidavit of hardship with the Board. Texas Industrial Accident Board Rule 61.11.00.012. In the event the Board determines that financial hardship exists and that no tender of advanced or accelerated payments has been made within ten days of the filing of claimant's affidavit of hardship, the Board must schedule an expedited prehearing conference. Texas Industrial Accident Board Rule 61.11.-00.020.

If a carrier suspends or stops payment of weekly compensation or medical benefits, it must file a statement to the Board within 10 days stating its reasons for such action. Failure to comply with this requirement subjects the carrier to a 15% penalty to be paid to the claimant. Tex.Rev.Civ.Stat. art. 8306 § 18a(b). If a carrier does not consent to abide by a final Board ruling, it must notify the Board within 20 days of the filing. It must then file suit in the district court within 20 days of giving notice. Failure to follow these procedures subjects the carrier to a 12% penalty plus attorney's fees, which are again paid to the claimant. Tex.Rev.Civ.Stat. art. 8307 § 5a.

Finally, if it appears to the Board that an insurer is, as a general business practice, wrongfully controverting claims and/or failing to promptly and adequately investigate claims, or is wrongfully suspending benefits, the carrier is subject to sanctions including a cease and desist order, a $10,-000 fine and/or revocation of its license. Tex.Rev.Civ.Stat. art. 8306 § 18a(d).

The legislative scheme for workers' compensation thus concerns itself not only with assuring compensation to injured workers, but with policing the procedures under which claims are made and paid. The Legislature mandates the relationship between the parties at all stages of the process, obviating the need we found in *Arnold* to provide a common law remedy for a private individual who might be disadvantaged by the superior bargaining power of an insurance company. While the legislative procedures and sanctions may not always be adequate, their shortcomings are a matter of legislative concern. I see neither the need nor the justification for superimposing a common law cause of action on a carefully crafted legislative scheme.

The majority of courts that have faced this issue have declined to permit a tort action based on bad faith settlement practices by insurance carriers. *See Garvin v. Shewbart*, 442 So.2d 80 (Ala.1983); *Stafford v. Westchester Fire Ins. Co.*, 526 P.2d 37 (Alaska 1974); *Sandoval v. Salt River Project*, 117 Ariz. 209, 571 P.2d 706 (Ct. App.1977); *Everfield v. State Compensation Ins. Fund*, 115 Cal.App.3d 15, 171 Cal.Rptr. 164 (1981); *Old Republic Co. v. Whitworth*, 442 So.2d 1078 (Fla.App.1983); *Bright v. Nimmo*, 320 S.E.2d 365 (Ga. 1984); *Robertson v. Travelers Ins. Co.*, 95 Ill.2d 441, 69 Ill.Dec. 954, 448 N.E.2d 866 (1983); *Hormann v. New Hampshire Ins. Co.*, 236 Kan. 190, 689 P.2d 837 (1984); *Zurich Ins. Co. v. Mitchell*, 712 S.W.2d 340 (Ky.1986); *Gallagher v. Bituminous Fire & Marine Ins. Co.*, 303 Md. 201, 492 A.2d 1280 (1985); *Denisen v. Milwaukee Mut. Ins. Co.*, 360 N.W.2d 448 (Minn.App.1985); *Young v. United States Fidelity & Guar. Co.*, 588 S.W.2d 46 (Mo.App.1979); *Dickson v. Mountain States Mut. Casualty Co.*, 98 N.M. 479, 650 P.2d 1 (1982); *Burlew v.*

*American Mut. Ins. Co.*, 63 N.Y.2d 412, 482 N.Y.S.2d 720, 472 N.E.2d 682 (1984); *Whitten v. American Mut. Liab. Ins. Co.*, 468 F.Supp. 470 (D.S.C.1977) *aff'd without opinion*, 594 F.2d 860 (4th Cir.1979). "The rationale of these cases has typically been that the legislature, anticipating that bad faith in delaying payment of benefits would occur on occasion, provided a 'quick, simple and readily accessible method' of resolving disputes over such payments without 'proof and defenses incident [to a common law action], the intolerable delay in resolution of a lawsuit, economic waste to all and expense to the worker' ". *Robertson, supra* 69 Ill.Dec. at 958, 448 N.E.2d at 870, *citing Everfield v. State Compensation Ins. Fund, supra*, 115 Cal.App.3d at 20, 171 Cal.Rptr. at 166.

The majority's reliance on *Travelers Ins. Co. v. Savio*, 706 P.2d 1258 (Colo.1985), is misplaced. In *Savio*, the court found that Colorado's statute "contain[ed] no provisions indicating that claims against an employer or insurer for bad faith in handling a claim for compensation or treatment are covered by its provisions, nor [did] the Act suggest any limitations on the potential remedies for such conduct." 706 P.2d at 1264. The Colorado statute is thus readily distinguishable from our own, which does contain remedies for workers who have been injured by the bad faith settlement practices of an insurance carrier. *See* Tex. Rev.Civ.Stat. art. 8306 § 18a, art. 8307 §§ 5, 5a.

I would accordingly hold that the exclusivity provisions of the Workers' Compensation Act do bar an action for breach of a duty of good faith and fair dealing in claims settlement. The reasons for nonpayment of benefits or delay in their payment can be investigated by the Industrial Accident Board in the manner designated by statute, with appropriate sanctions. I would hold this court is without authority to create a parallel scheme for judicial inquiry into the settlement practices of insurers.

Moreover, even if it were proper to recognize a tort duty of good faith and fair dealing, I fail to see in what way Aranda

**218**

has alleged bad faith on the part of the insurance companies in this case. The gravamen of Aranda's complaint is that the two insurance companies sought an adjudication by the Industrial Accident Board of their respective liability for Aranda's claims. I find nothing in the statute to suggest that they were not within their rights to do so. And if they were within their rights, surely the legitimate exercise of a statutory right should not constitute the violation of a common law duty.

The Workers' Compensation Act is by no means perfect, as recent criticisms from representatives of workers, employers, and insurers have made clear. Nonetheless, thousands of claims are resolved under its auspices every year. In this, it serves its primary legislative purposes of assuring certain and timely resolution of claims. In my view, this court's insertion of a common law duty of good faith and fair dealing invites the proliferation of lawsuits and the possibility of double recoveries and inconsistent findings of fact. To permit a tort remedy in addition to the remedies provided by statute betrays the bargain implicit in the Act and necessarily impairs the function of the compensation system.

Therefore, I dissent.

CULVER, J., joins in this dissent.

WALLACE, Justice, dissenting.

I respectfully dissent. I would not foreclose a suit for bad faith against a workers' compensation insurer.

However, in this case, the insurers resorted to the Industrial Accident Board to resolve a legal dispute, i.e., which of the insurers were primarily liable for Aranda's compensation. This is the procedure mandated by the Workers' Compensation Act, thus, they should not be penalized for following the law.

GONZALEZ, J., joins in this dissent.