**BEAUMONT RICE MILL, INC.,**
Plaintiff–Appellee,

v.

**MID–AMERICAN INDEMNITY
INSURANCE COMPANY,**
Defendant–Appellant.

No. 91–4147.

United States Court of Appeals,
Fifth Circuit.

Dec. 17, 1991.

Rehearing Denied Jan. 15, 1992.

Joseph W. Spence, Jerry K. Sawyer, Gandy, Michener, Swindle, Whitaker & Pratt, Fort Worth, Tex., for defendant-appellant.

Jo Ben Whittenburg, Gilbert I. Low, Orgain, Bell & Tucker, Beaumont, Tex., for plaintiff-appellee.

Before GOLDBERG, SMITH, and DUHÉ, Circuit Judges.

DUHÉ, Circuit Judge:

Defendant/Appellant Mid–American Indemnity Insurance Company issued an excess general liability policy to its insured, Appellee Beaumont Rice Mill, Inc. Beaumont Rice was originally sued by Joseph Henderson, who was injured when a sack of rice fell on him during the course of his employment with Lake Charles Stevedores. Beaumont Rice third-partied Mid–American, seeking declaratory relief as to the policy interpretation and damages for bad faith, violations of Texas Deceptive Trade Practices Act ("DTPA") and the Texas Insurance Code, and negligence.

After Beaumont and other defendants settled with Henderson for $175,000 over the primary limits, Beaumont's third-party claim against its excess insurer, Mid–American, was tried to the court. The district court found for Beaumont under the policy and awarded $616,512.03, including attorneys fees and punitive damages. Finding that the claim was excluded under the policy and that Mid–American did not act negligently or in bad faith, we REVERSE and RENDER a judgment that Beaumont take nothing.

## I. THE EXCLUSION

■ The original plaintiff who sued Beaumont for negligence was receiving

compensation benefits from his employer under the Longshore and Harbor Workers' Compensation Act ("LHWCA"). Mid–American's policy to Beaumont provides that it does not apply to

> (m) any losses arising out of injuries covered under the United States Longshore and Harbor Workers['] Act, Federal Employees Liability Act, Maritime or Admiralty Law whether brought by the injured employee or any third party.

Mid–American denied coverage under the foregoing exclusion, deeming the claim a "loss[] arising out of an injury covered under the [LHWCA]." Beaumont asserts that exclusion (m) excludes claims by only its *own* employees entitled to recovery under the LHWCA.

*"Losses Arising out of Injuries Covered under the [LHWCA]."* Beaumont's interpretation of this phrase is untenable: Beaumont replaces the word "losses" with the definition of "loss" so that exclusion (m) excludes any " 'sums the insured is legally obligated to pay as damages ...' arising out of injuries covered under the [LHWCA]." Beaumont then concludes that exclusion (m) excludes either *claims* under LHWCA or *legal obligations* under LHWCA.

The phrase "under the [LHWCA]" does not modify "damages" or "legally obligated," newly inserted from the definition of "loss." As the exclusion is written, "under the [LHWCA]" plainly modifies "covered." If the insurance contract "is expressed in plain and unambiguous language, a court cannot resort to the various rules of construction";[1] the contract must be construed in accordance with its plain language. *Great American Indem. Co. v. Pepper,* 161 Tex. 263, 339 S.W.2d 660, 661 (1960).

Beaumont argues further that the legal theory of Henderson's claim against Beaumont is negligence, not LHWCA, so that his claim is not excluded. The legal theory under which an employee institutes suit is irrelevant under the plain terms of the policy. The only requirements for exclusion are that the *loss* arose out of the *injury* and that the *injury* was *covered* under the LHWCA. The loss, or damages Beaumont was obligated to pay Henderson, indisputably arose out of his injury, and his injury was admittedly covered under LHWCA. As the exclusion reads, whether the employee's *theory* arose under LHWCA is of no moment.

*"Injured Employee or Any Third Party."* Beaumont construes the phrase "injured employee" as "injured employee of Beaumont." The addition of such a qualifying phrase "violate[s] the construction rule of giving the language its ordinary meaning." *Glenn v. Gidel,* 496 S.W.2d 692, 702 (Tex.Civ.App.—Amarillo 1973, no writ). We agree with Mid–American that "injured employee" refers to a type of claimant and will not read "employee" as "insured's employee."

We need not look beyond this case to understand that the phrase "third party" denotes a type of claimant, such as an injured employee's employer seeking contribution or a compensation carrier seeking reimbursement. In the context of the policy provision, the phrase "any third party" signifies such a third-party claimant.

*The Policy as a Whole.* Reading the policy as a whole lends further support to Mid–American's reading of exclusion (m). For example, the definitional section of the policy provides as follows:

> Employer's Liability losses means personal injury sustained by employees in the course of their employment by the insured, however no coverage is provided under this policy for any losses arising out of injuries covered under the United States Longshore and Harbor Workers

---

1. *Barnett v. Aetna Life Ins. Co.,* 723 S.W.2d 663, 665 (Tex.1987) (citing *Puckett v. United States Fire Ins. Co.,* 678 S.W.2d 936, 938 (Tex.1984)). The contract is not ambiguous in this case, because only one reasonable interpretation exists. *Insurance Co. of N. Am. v. Cypress Bank,* 663 S.W.2d 122, 124–25 (Tex.Ct.App.—Houston [1st Dist.] 1983) (citing *Gibson v. Bentley,* 605 S.W.2d 337 (Tex.Ct.App.—Houston [14th Dist.] 1980, writ ref'd n.r.e.)), *modified,* 674 S.W.2d 781 (Tex.Ct.App.—Houston [1st Dist.] 1984, no writ). In this case Mid–American's interpretation is reasonable; Beaumont's interpretation is unreasonable.

Act, Federal Employees Liability Act or Maritime or Admiralty Law.

The qualifying phrase "by the insured" specifically modifies "employment" in the foregoing provision; therefore, the omission of such a qualifier in exclusion (m) suggests that "employee" does not signify "employee of the insured."

Still another provision supports Mid-American's construction of exclusion (m). According to a separate exclusion, the policy does not apply to

(j) any obligation for which the Insured or any carrier as his insurer may be held liable under any workmen's compensation, unemployment compensation or disability benefits law, or under any similar law.

The fact that exclusion (j) is specifically tailored to injuries sustained in the course of employment by the insured suggests that exclusion (m) serves another purpose. "Generally the parties to an instrument intend every clause to have some effect and in some measure to evidence their agreement." *City of Pinehurst v. Spooner Addition Water Co.*, 432 S.W.2d 515, 518 (Tex.1968). If we accept Beaumont's interpretation of exclusion (m) as excluding only its *own* employees' claims covered under the LHWCA, exclusion (m) would be redundant.

Additionally, exclusion (j) undermines Beaumont's "public policy" argument about avoiding duplication of insurance coverage for its employees covered by compensation insurance: exclusion (j) serves the very purpose or policy Beaumont suggests that exclusion (m) was intended to serve.

Upon considering exclusion (m) alone and in the context of the entire policy, we find Mid-American's interpretation reasonable and Beaumont's interpretation unreasonable.

## II. EXTRA-CONTRACTUAL DAMAGES

■ Because we disagree with the trial court's interpretation of exclusion (m), we reverse its awards of punitive and exemplary damages of all types. Assuming, without deciding, that a Texas common-law duty of good faith and fair dealing exists on the part of an excess carrier in a commercial context, Mid-American could not have breached such a duty, because its denial of the claim was reasonable. *See Arnold v. National County Mut. Fire Ins. Co.*, 725 S.W.2d 165, 167 (Tex.1987) (lack of "reasonable basis" or failure to determine whether there was "reasonable basis" for denial of claim under policy is an element of claim for breach of duty of good faith and fair dealing).

■ A carrier maintains the right to deny an invalid or questionable claim without becoming subject to liability for bad faith denial of the claim. *Aranda v. Insurance Co. of N. Am.*, 748 S.W.2d 210, 213 (Tex.1988); *see also Plattenburg v. Allstate Ins. Co.*, 918 F.2d 562, 563 (5th Cir. 1990).

Because Mid-American did not act in bad faith, and because it never became reasonably clear that Beaumont had a valid claim, we reverse the discretionary damage award under DTPA and the Insurance Code. *See* Tex.Ins.Code Ann. art. 21.21-2 § 2(d) (West 1981) (defining unfair claim settlement practices to include not attempting to settle claims "in which liability has become reasonably clear"); Tex.Bus. & Com.Code Ann. § 17.50(a)(4) (West 1987) (incorporating violation of Tex.Ins.Code art. 21.21 as a cause of action for damages).

The award for exemplary damages in tort is also reversed. The reasonableness of Mid-American's position precludes such recovery: if failing to pay was justifiable, it could not be negligent, malicious, or grossly negligent.

We need not decide whether expert testimony was admissible for issues such as whether Mid-American acted negligently, maliciously, or reasonably. The dispositive issue of the interpretation of exclusion (m) is decided by the Court on the basis of the written contract as a matter of law. *See Pinehurst*, 432 S.W.2d at 518. The exclusion obviates the need for fact-finding on other issues, as discussed above.

Finally, we reverse the attorneys' fee award also, because Beaumont has not

"prevailed" on its claim or recovered "a valid claim." *See* Tex.Civ.Prac. & Rem. Code Ann. § 38.001(8) (West 1986) ("person may recover ... attorney's fees ... in addition to the amount of a valid [contractual] claim"); Tex.Bus. & Com.Code Ann. § 17.-50(d) (West 1987) ("consumer who prevails shall be awarded ... attorneys' fees").

## III.  CONCLUSION

Exclusion (m) squarely applies to the claim brought by Beaumont for insurance coverage of its obligations for Henderson's personal injuries, because his injuries were covered under LHWCA.  Because Mid–American's denial of coverage was reasonable, extra-contractual damages should not have been awarded.  Accordingly, the judgment of the district court is REVERSED, and judgment is RENDERED in favor of Mid–American denying recovery to Beaumont on every claim.

REVERSED AND RENDERED.