

NUMBER 13-08-00351-CV

# COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

| | |
|---|---|
| **MITCH BURKHART AND**<br>**CHRISTINE BURKHART,** | **Appellants,** |
| **v.** | |
| **SEDGWICK CLAIM MANAGEMENT**<br>**SERVICES, INC. AND CONCENTRA**<br>**INTEGRATED SERVICES, AND**<br>**RGV/NUECES REHABILITATION**<br>**D/B/A INNOVATIVE PHYSICAL AND**<br>**OCCUPATIONAL THERAPY,** | **Appellees.** |

### On appeal from the 117th District Court
### of Nueces County, Texas.

## MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Garza and Vela**
**Memorandum Opinion by Justice Garza**

Appellants, Mitch and Christine Burkhart, challenge the trial court's judgment in favor of appellees, Sedgwick Claim Management Services, Inc. ("Sedgwick"), Concentra Integrated Services ("Concentra"), and RGV/Nueces Rehabilitation d/b/a Innovative Physical and Occupational Therapy ("Innovative"). The Burkharts contend that the trial court erred by (1) granting the motion to dismiss filed by Innovative and (2) granting the

traditional motions for summary judgment filed by Sedgwick and Concentra. Innovative filed a motion to dismiss the appeal against it. We deny Innovative's motion and affirm the trial court's judgment.

## I. BACKGROUND

On April 25, 2005, Mitch Burkhart suffered injuries to his foot and ankle while training to climb telephone poles for his employer, Verizon Communications ("Verizon"). At the time, Verizon was covered by a workers' compensation insurance policy issued by American Home Assurance ("AHA"). AHA and Verizon contractually delegated the administration and adjustment of all workers' compensation claims filed under the policy to Sedgwick. In turn, Sedgwick hired Concentra, a healthcare management services provider, to arrange and facilitate independent medical examinations of injured claimants.

According to Sedgwick, in the course of adjusting Mitch's claim, it determined that a Required Medical Examination ("RME") and Functional Capacity Evaluation ("FCE") would be needed to evaluate Mitch's ability to return to work. Consequently, at the request of Sedgwick, Concentra sent a letter to Mitch on July 15, 2005, asking that he agree to undergo an RME and stating that if he did not agree, it would seek an order compelling him to submit to such an examination pursuant to the Texas Workers' Compensation Act ("TWCA"). *See* TEX. LAB. CODE ANN. § 408.004(a) (Vernon Supp. 2008) ("The commissioner [of workers' compensation] may require an employee to submit to medical examinations to resolve any question about the appropriateness of the health care received by the employee."), § 408.004(b) ("The commissioner may require an employee to submit to a medical examination at the request of the insurance carrier, but only after the insurance carrier has attempted and failed to receive the permission and concurrence of the employee for the examination."). The evaluation was to be performed by Innovative, an independent rehabilitation clinic that was in a contractual relationship with Concentra.

According to Sedgwick, Mitch did not respond to Concentra's July 15, 2005 letter.

Nevertheless, the record reflects that on July 27, 2005, Mitch signed a "Consent to Evaluation" form provided by Innovative. By signing the form, Mitch agreed to undergo an FCE and agreed to "accept the risks involved in this type of testing." The form additionally stated: "I acknowledge that this testing will require me to work to my safe, full-effort ability throughout the examination. The evaluation may require physical demands such as lifting, pushing, pulling, gripping and repetitive tasks. Further, this evaluation will require a full and complete medical history." Mitch noted on the form that podiatrist David Secord, D.P.M., was his treating physician. The FCE was scheduled to take place on September 27, 2005.

In the meantime, Mitch's ongoing physical therapy was proving ineffective. Therefore, on August 12, 2005, Dr. Secord performed surgery on the injured foot and ankle. The Burkharts contend that, after the surgery, Mitch was under strict orders from Dr. Secord not to place any weight on the injured foot to ensure that he healed properly.

The FCE proceeded as scheduled. According to the Burkharts, the Innovative therapist performing the evaluation first examined and measured Mitch's foot, and then asked him to exhibit movements such as heel-to-toe walking, going up and down small steps, and walking on a treadmill. Mitch testified at his deposition that, during the treadmill exercise, the therapist increased the speed and incline angle of the treadmill until the pain was "excruciating" and he had to stop. According to the Burkharts, soon after the FCE, Sedgwick terminated his workers' compensation benefits.

On September 1, 2006, the Burkharts sued Sedgwick, Concentra, and Innovative, claiming that the activities Mitch was asked to perform as part of the FCE "permanently damaged" his foot and ankle and aggravated his injury to the point that his ankle was "destroyed." In their second amended original petition, filed on October 16, 2007, the Burkharts asserted that by failing to consult with Dr. Secord before administering the FCE, Sedgwick and Concentra engaged in a civil conspiracy to unlawfully practice medicine without a license in violation of the Texas Medical Practice Act. *See* TEX. OCC. CODE ANN.

3

§ 155.001 (Vernon 2004). The petition also asserted claims of negligence, assault, fraud, and breach of the duty of good faith and fair dealing against all three defendants.

In response to a discovery request propounded by Innovative, the Burkharts served an unsworn written report by Dr. Secord, which stated in part:

> By sending [Mitch] to a facility for an MMI [Maximum Medical Improvement] rating, intended to duplicate the work he does, and ordering the patient to attend this MMI rating without my knowledge or consent, I contend that the insurance company put me in legal jeopardy by compromising the outcome of the surgery and setting me up for potential malpractice damages.

> By doing this, I also contend that they blatantly violated the protected covenant between the physician and patient.

> By forcing rigorous weightbearing exercise involving treadmill walking at an incline on a foot that had recently had a surgical procedure performed and wasn't even allowed weightbearing yet, they dehisced the incision. This action set the patient up for the massive scar tissue formation he is currently experiencing. . . . I believe this constitutes gross negligence on the part of the insurance company, with obvious damages.

> . . . .

> The patient continues to experience pain commensurate with or greater than the pain he had before the surgical intervention. I attribute this directly to the idiotic MMI rating ordered by the insurance company on the recently incised medial ankle. . . .

The Burkharts also provided an affidavit executed by Mitch, which stated in part:

> Prior to the [FCE], I assumed Dr. David Secord, my treating physician, was consulted by either [Sedgwick], [Concentra,] and/or [Innovative]. . . . It is my understanding that that [FCE] was not ordered by a physician. I also now know that Dr. David Secord was not consulted or notified about the [FCE] by anyone from [Sedgwick], [Concentra,] and/or [Innovative]. If this information would have been provided to me before the procedure, I would never have agreed to the [FCE]. I consider this information a material factor in making an informed decision to proceed with this procedure.

> I have suffered severe and permanent injury to my foot as a result of this procedure. If I had been told by [Sedgwick], [Concentra,] and/or [Innovative] that there was a risk of permanent injury in this procedure, I would never have agreed to the [FCE]. I consider this risk a material factor in making an informed decision to proceed with the [FCE].

On December 21, 2006, Innovative moved to dismiss the Burkharts' case against it, claiming that Dr. Secord's report was inadequate to satisfy the requirement for health

4

care liability claims, in part because the report was unaccompanied by a curriculum vitae and failed to specifically mention Innovative by name. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351 (Vernon Supp. 2008).[1] Innovative later filed an amended motion to dismiss on April 6, 2007, additionally noting that 120 days had passed since the Burkharts' original petition was filed. *See id.* The trial court granted Innovative's amended motion to dismiss on May 3, 2007.

Sedgwick and Concentra each filed motions to dismiss and for traditional summary judgment.[2] Both Sedgwick and Concentra argued in their motions that: (1) the Burkharts' suit is barred because the recovery of workers' compensation benefits constituted the exclusive remedy for his injury, *see* TEX. LAB. CODE ANN. § 408.001(a) (Vernon 2006); (2) they owed no duty to Burkhart to obtain his doctor's permission before scheduling the FCE; (3) their conduct was not a proximate cause of the injuries Burkhart sustained during the FCE; (4) they cannot be held vicariously liable for the actions of Innovative because Innovative was an independent contractor over which they had no right of control; and (5) Burkhart consented to the FCE and accepted its risks. Concentra additionally argued in its motions it was entitled to summary judgment on the fraud claim because it never made any false representation to Burkhart. Sedgwick included with its motions an affidavit by Mildred Pierce, a claims supervisor, stating in part that Sedgwick obtained an order from the Texas Workers' Compensation Commission ("TWCC")[3] directing Mitch to undergo an

---

[1] On January 10, 2008, Sedgwick filed, and Concentra joined, its "Objections to Plaintiffs' Summary Judgment Proof," requesting that the affidavits of Dr. Secord and Mitch be stricken. The record contains no ruling by the trial court as to these objections.

[2] Sedgwick and Concentra each filed two separate motions to dismiss and for traditional summary judgment. The initial motions addressed only the Burkharts' claims of negligence, assault, and fraud; these were apparently the only claims made in the Burkharts' first original petition, which does not appear in the record. The second motions filed by Sedgwick and Concentra addressed the additional claims of civil conspiracy and breach of duty of good faith and fair dealing that were first made in the Burkharts' second amended original petition.

[3] As of September 1, 2005, the Texas Workers' Compensation Commission ceased to exist and was replaced by the Texas Department of Insurance-Division of Workers' Compensation. *See* Act of June 1, 2005, 79th Leg., R.S., ch. 265, § 8.001, 2005 TEX. GEN. LAWS 469, 607.

RME and that Sedgwick subsequently requested that Mitch also undergo an FCE. Concentra's motions included an affidavit executed by Russell D. Howard, a project manager employed by Concentra, stating in part that the TWCC had ordered, pursuant to Innovative's request, that Mitch undergo an RME. Howard also stated that Concentra "is not required to obtain a prescription or a physician's referral before scheduling an FCE . . . [n]or is it required to get approval from the TWCC . . . before scheduling an FCE."

After contested hearings, the trial court granted Sedgwick's and Concentra's motions for summary judgment without specifying the grounds upon which the motions were granted.[4] This appeal followed.

## II. Discussion

### A. Innovative's Motion to Dismiss

#### 1. Jurisdiction

On January 12, 2009, Innovative filed a motion to dismiss the appeal against it, contending that we lack jurisdiction because the Burkharts failed to timely perfect its appeal. In the motion, Innovative notes that the trial court's May 3, 2007 order dismissing the Burkharts' case against Innovative constituted an appealable interlocutory order. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(10) (Vernon 2008) (permitting appeal of interlocutory order that grants relief sought by a motion under section 74.351(*l*), regarding challenges to the adequacy of a required expert report). Innovative argues that, because the May 3, 2007 order was appealable, the Burkharts were required to file a notice of appeal with respect to the order within twenty days of the order's issuance. *See* Tex. R. App. P. 26.1(b). The Burkharts did not file a notice of appeal until January 28, 2008.

We disagree with Innovative that the Burkharts were required to appeal the

---

[4] The trial court granted Sedgwick's and Concentra's initial motions for summary judgment on November 14, 2007, and it granted their second motions for summary judgment on March 10, 2008.

interlocutory order dismissing their case against it.[5] The statute authorizing interlocutory appeals is permissive, not mandatory. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a) ("A person *may* appeal from an interlocutory order . . .") (emphasis added); TEX. GOV'T CODE ANN. § 311.016(1) (Vernon 2005) ("'May' creates discretionary authority or grants permission or a power."). In *Hernandez v. Ebrom*, the Texas Supreme Court considered a similar situation, wherein a medical liability defendant who had been non-suited sought to challenge an earlier order denying his motion to dismiss the plaintiff's case against him for an inadequate expert report. No. 07-0240, 2009 Tex. LEXIS 474, at *1-4 (Tex. July 3, 2009). There, the Court found that the defendant did not waive his right to challenge the order simply because he failed to pursue the interlocutory appeal authorized by statute. *Id.* at *4. The Court noted that:

> [t]he Legislature *authorized* health care providers to pursue interlocutory appeals from trial court denials of challenges to plaintiffs' expert reports, but we see no indication that the Legislature effectively *mandated* interlocutory appeals by providing that if no appeal was taken, then the health care provider waived the right to challenge the report under all circumstances.

*Id.* at *7 (emphasis in original). Similarly, there is no indication that the Legislature intended to require plaintiffs to appeal interlocutory orders granting medical liability defendants' motions to dismiss based on the failure to file an adequate expert report. Following the logic of *Hernandez*, as we must, we conclude that the Burkharts' notice of appeal was timely, and Innovative's motion to dismiss the appeal is denied.

### 2. Adequacy of Expert Report

By their first issue, the Burkharts contend that the trial court erred by dismissing their case against Innovative due to an inadequate expert report. We review a trial court's order granting a motion to dismiss for failure to comply with the expert report requirement under an abuse of discretion standard. *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46

---

[5] We note that the parties agree that the May 3, 2007 order was interlocutory and not a final judgment. *See Martinez v. Humble Sand & Gravel*, 875 S.W.2d 311, 312 (Tex. 1994) ("[T]o be a 'final' judgment subject to appeal, the judgment must dispose of all parties and all issues.").

S.W.3d 873, 878 (Tex. 2001).  A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner or without reference to any guiding rules or principles.  *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985).

A plaintiff asserting a health care liability claim must provide each defendant physician and health care provider[6] an expert report containing the expert's curriculum vitae and

> a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed.

TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(6) (Vernon Supp. 2007); *see Palacios*, 46 S.W.3d at 877.  If a plaintiff timely files an expert report and the defendant moves to dismiss because of the report's inadequacy, the trial court must grant the motion "only if it appears to the court, after hearing, that the report does not represent a good faith effort to comply with the definition of an expert report in [section 74.351(r)(6)]."  *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 51-52 (Tex. 2002); *see Palacios*, 46 S.W.3d at 878.  To constitute a "good faith effort," the report must provide enough information to fulfill two purposes:  (1) it must inform the defendant of the specific conduct the plaintiff has called into question, and (2) it must provide a basis for the trial court to conclude that the claims have merit.  *Bowie Mem'l Hosp.*, 79 S.W.3d at 52; *see Palacios*, 46 S.W.3d at 879.  The trial court should look no further than the report itself, because all the information relevant to the inquiry is contained within the document's four corners.  *Bowie Mem'l Hosp.*, 79 S.W.3d at 52 (citing *Palacios*, 46 S.W.3d at 878).

Dr. Secord's report was not accompanied by a curriculum vitae, nor did it specifically refer to Innovative by name.  *See Wood v. Tice*, 988 S.W.2d 829, 831 (Tex. App.–San Antonio 1999, pet. denied) ("The report must *specifically refer* to the defendant and discuss

---

[6] It is undisputed that Innovative is a health care provider and that the Burkharts' claim against it is a health care liability claim.  *See* TEX. CIV. PRAC. & REM. CODE ANN.  § 74.001(a)(12), (a)(13) (Vernon 2005).

how that defendant breached the applicable standard of care.") (emphasis added). Moreover, although the report repeatedly places blame on "the insurance company" for ordering the FCE, it does not state what, if any, standard of care was owed or was breached by Innovative. We cannot conclude that Dr. Secord's report was a "good faith" effort to comply with the expert report requirement because it does not inform Innovative of any specific conduct being called into question, and it provides no basis for the trial court to conclude that the Burkharts' claim against Innovative has any merit. *See Bowie Mem'l Hosp.*, 79 S.W.3d at 52. Accordingly, the trial court did not abuse its discretion by granting Innovative's motion to dismiss. The Burkharts' first issue is overruled.

## B.    Sedgwick's and Concentra's Motions for Summary Judgment

The Burkharts argue by their second issue that the trial court erred by granting Sedgwick's and Concentra's motions for summary judgment.

### 1.    Standard of Review

We review a trial court's granting of a traditional motion for summary judgment under a de novo standard of review. *Creditwatch, Inc. v. Jackson*, 157 S.W.3d 814, 816 n.7 (Tex. 2005) (citing *Schneider Nat'l Carriers, Inc. v. Bates*, 147 S.W.3d 264, 290 n.137 (Tex. 2004)); *Alaniz v. Hoyt*, 105 S.W.3d 330, 345 (Tex. App.–Corpus Christi 2003, no pet.). To obtain relief via a traditional motion for summary judgment, the movant must establish that no material fact issue exists and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *see Garza v. Exel Logistics, Inc.*, 161 S.W.3d 473, 475 n.10 (Tex. 2005) ("[A] defendant moving for summary judgment on an affirmative defense must prove each element of its defense as a matter of law, leaving no issues of material fact."); *Mowbray v. Avery*, 76 S.W.3d 663, 690 (Tex. App.–Corpus Christi 2002, pet. denied). After the movant produces evidence sufficient to show it is entitled to summary judgment, the non-movant must then present evidence raising a fact issue. *See Walker v. Harris*, 924 S.W.2d 375, 377 (Tex. 1996).

9

In deciding whether there is a disputed fact issue that precludes summary judgment, evidence favorable to the non-movant will be taken as true. *Am. Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 425 (Tex. 1997) (citing *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548-49 (Tex. 1985)). Evidence favorable to the movant, however, will not be considered unless it is uncontroverted. *Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.*, 391 S.W.2d 41, 47 (Tex. 1965). Moreover, every reasonable inference will be indulged in favor of the non-movant and any doubts resolved in its favor. *Grinnell*, 951 S.W.2d at 425 (citing *Nixon*, 690 S.W.2d at 549).

Because the trial court's orders granting summary judgment do not state the specific ground or grounds relied upon for the ruling, we will affirm the judgment on appeal if any of the theories advanced by the movant are meritorious. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001) (quoting *Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex. 1989)).

### 2. Applicable Law

A primary purpose of the TWCA is to relieve employees injured on the job of the burden of proving their employer's negligence and to provide them prompt remuneration for their injuries. *Payne v. Galen Hosp. Corp.*, 28 S.W.3d 15, 17 (Tex. 2000); *Hulshouser v. Tex. Workers' Comp. Ins. Fund*, 139 S.W.3d 789, 791 (Tex. App.–Dallas 2004, no pet.). In exchange, the benefits under the TWCA provide the exclusive remedy for on-the-job injuries, prohibiting the employee from seeking common-law remedies from his employer, its agents, and co-employees. *Hulshouser*, 139 S.W.3d at 792; *see W. Steel Co. v. Altenburg*, 169 S.W.3d 347, 349 (Tex. App.–Corpus Christi 2006), *rev'd on other grounds*, 206 S.W.3d 121, 124 (Tex. 2006). The TWCA specifically provides that the "[r]ecovery of workers' compensation benefits is the exclusive remedy of an employee covered by workers' compensation insurance coverage or a legal beneficiary against the employer . . . for a work-related injury sustained by the employee." TEX. LAB. CODE ANN. § 408.001(a).

10

Under the TWCA, a "compensable injury" is one that arises out of and in the course and scope of employment. *Id.* § 401.011(10) (Vernon Supp. 2008). "Course and scope" has been interpreted expansively to include additional injuries that result from treating on-the-job injuries. *Hulshouser*, 139 S.W.3d at 792 (citing *Payne*, 28 S.W.3d at 18). Compensability extends to what has been labeled an "extension injury," which includes "an injury occurring in the probable sequence of events and arising from the actual compensable injury." *Id.* (citing *Duke v. Wilson*, 900 S.W.2d 881, 886 (Tex. App.–El Paso 1995, writ denied)).

Nevertheless, the exclusive remedy provision of the TWCA does not bar a claim against an insurer for breach of the duty of good faith and fair dealing or intentional misconduct in the processing of a compensation claim. *Aranda v. Ins. Co. of N. Am.*, 748 S.W.2d 210, 212-14 (Tex. 1988) ("[T]here is a duty on the part of workers' compensation carriers to deal fairly and in good faith with injured employees in the processing of compensation claims."). A claimant is permitted to recover when he shows that the insurer's breach of the duty of good faith and fair dealing or the insurer's intentional act is "separate from the compensation claim and produced an independent injury." *Id.* (citing *Massey v. Armco Steel Co.*, 652 S.W.2d 932, 933 (Tex. 1983)).

### 3.    Analysis

The Burkharts assert on appeal that the trial court erred in granting summary judgment to Sedgwick and Concentra because (1) Sedgwick and Concentra did not "conclusively prove they breached no duties of care owed directly to Mitch"; (2) Sedgwick and Concentra did not "conclusively negate joint and several liability"; and (3) Sedgwick and Concentra did not "conclusively prove Mitch's new injury is an extension injury."[7] In response, Sedgwick and Concentra each argue that: (1) they did not breach any legally

---

[7] The Burkharts also contend that the trial court erred by sustaining Sedgwick's and Concentra's objections to the Burkharts' summary judgment evidence. However, as noted *supra* n.1, the record does not contain any ruling by the trial court as to these objections. *See* TEX. R. APP. P. 47.1.

11

cognizable duty; (2) their conduct was not, as a matter of law, a proximate cause of any injuries sustained by Mitch during the FCE; (3) Mitch consented to the FCE and accepted its risks; (4) they are not vicariously liable for the actions of Innovative; and (5) the TWCA provides the exclusive remedy for Mitch's aggravation injury. Without addressing the arguments made by Sedgwick and Concentra as to duty, proximate causation, consent, and vicarious liability, we conclude that all of the Burkharts' causes of action against these two defendants are barred by the exclusive remedy provision of the TWCA.

The aggravation of an employee's on-the-job injury is generally considered work-related for purposes of the exclusive remedy provision. *Payne*, 28 S.W.3d at 20; *Darensburg v. Tobey,* 887 S.W.2d 84, 87 (Tex. App.–Dallas 1994, writ denied). In *Darensburg*, an employee's on-the-job injury was aggravated after the employee was misdiagnosed by the medical director of his employer's on-site health facility. 887 S.W.2d at 85-86. The Dallas Court of Appeals held that the exclusive remedy provision barred the employee's suit for the aggravation injury. *Id.* at 90. In *Payne*, an employee aggravated her on-the-job injury by taking medication dispensed by a publicly-accessible hospital pharmacy. 28 S.W.3d at 20. There, the Texas Supreme Court similarly held that the exclusive remedy provision barred the employee's recovery for her aggravation injury. *Id.*

In *Aranda*, on the other hand, an employee's suit against a workers' compensation carrier was deemed sustainable despite the TWCA's exclusive remedy provision. 748 S.W.2d at 214. In that case, Miguel Aranda alleged that his workers' compensation carriers breached their duty of good faith and fair dealing by failing to promptly pay his claim. *Id.* at 211. The Texas Supreme Court noted that "[l]iability as a result of a carrier's breach of the duty of good faith and fair dealing or intentional misconduct in the processing of a compensation claim is distinct from the liability for the injury arising in the course of employment." *Id.* at 214. Because Aranda pleaded a "sufficient factual basis" to support his claims, the trial court erred in dismissing the case for failure to state a cause of action.

*Id.*

*Aranda* is distinguishable from the instant case, however, for several reasons. First, Aranda appealed the trial court's outright dismissal of his claims against the workers' compensation carriers; here, the Burkharts seek reversal of the trial court's summary judgment in favor of the carriers. Unlike the court in *Aranda*, we have the benefit of reviewing a summary judgment record that includes affidavits by Pierce and Howard establishing that Sedgwick and Concentra were not required to obtain permission from the TWCC or Dr. Secord before scheduling Mitch's FCE.

Second, the *Aranda* Court specifically noted that the employee in that case sought damages specifically related to the carriers' failure to pay compensation benefits—that is, losses to credit, reputation, and the ability to maintain a job when his credit was a matter of consideration for his employer. *Id.* In contrast, the damages sought by the Burkharts—including damages for medical care, physical pain and suffering, mental anguish, and physical impairment—are of the same kind as those for which the TWCA was designed to provide the exclusive remedy.

Third, and perhaps most importantly, Aranda's suit was based on the failure of the insurance carriers to promptly pay his claim. On the other hand, the Burkharts' suit is based on an aggravation of an on-the-job injury that took place during an FCE, which is a standard evaluation that is specifically authorized by statute and administrative rule. *See* TEX. LAB. CODE ANN. § 413.018(c) (Vernon 2006) ("The [Texas Department of Insurance-Workers' Compensation Division] may require a treating or examining doctor, on the request of the employer, insurance carrier, or division, to provide a functional capacity evaluation of an injured employee . . . ."); 28 TEX. ADMIN CODE § 134.202(e)(4) (2009) (noting that "[a] maximum of three FCEs for each compensable injury shall be billed and reimbursed"). The Burkharts contend that Sedgwick and Concentra breached their duties by failing to obtain Dr. Secord's permission before requesting the evaluation, and that the

13

injury suffered by Mitch during the FCE was therefore independent of his original work-related injury. However, the Burkharts direct us to no law, and we find none, indicating that workers' compensation carriers are required to obtain the permission of an employee's treating physician before scheduling an FCE, or that the failure to do so renders any further aggravation injury "independent" for purposes of the exclusive remedy provision.

We believe that Mitch's aggravation injury is instead properly classifiable as an "extension injury," because the administration of an FCE is clearly "in the probable sequence of events . . . arising from the actual compensable injury." *See Hulshouser*, 139 S.W.3d at 792 (citing *Duke*, 900 S.W.2d at 886). Further, we cannot say that Burkhart's aggravation injury is "separate" from his workers' compensation claim, nor that it "produced an independent injury." *See Aranda*, 748 S.W.2d at 214.

We conclude that Sedgwick and Concentra established that they are entitled to judgment as a matter of law. *See* TEX. R. CIV. P. 166a(c); *Garza*, 161 S.W.3d at 475 n.10; *Hulshouser*, 139 S.W.3d at 792.[8] Accordingly, the trial court did not err by granting their motions for summary judgment. The Burkharts' second issue is overruled.

### III. CONCLUSION

Innovative's motion to dismiss the appeal is denied. The judgment of the trial court is affirmed with respect to all appellees.

DORI CONTRERAS GARZA,
Justice

Memorandum Opinion delivered and
filed this the 31st day of August, 2009.

---

[8] We note that the exclusive remedy provision of the TWCA did not preclude the Burkharts from obtaining relief against Innovative or any of its employees, because Innovative is undisputedly not an "agent or employee" of Mitch's employer and is therefore not subject to the statute. *See* TEX. LAB. CODE ANN. § 408.001(a) (Vernon 2006). Moreover, the Burkharts are not precluded from seeking relief with respect to the termination of Mitch's workers' compensation benefits under the administrative dispute resolution procedures provided by the TWCA. *See id.* §§ 410.002–.308 (Vernon Supp. 2008).

14