Petition for Writ of Mandamus Conditionally Granted and Memorandum
Opinion filed February 24, 2009








 

Petition
for Writ of Mandamus Conditionally Granted and Memorandum Opinion filed
February 24, 2009.

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-09-00086-CV

____________

 

IN RE LIBERTY MUTUAL INSURANCE COMPANY, ARCH INSURANCE
COMPANY, and SPECIALTY ADJUSTERS, INC., Relators

 

 



 

ORIGINAL
PROCEEDING

WRIT OF MANDAMUS

 



 

M E M O R
A N D U M   O P I N I O N

In this
original proceeding, relators, Liberty Mutual Insurance Company, Arch Insurance
Company, and Specialty Adjusters, Inc., seek a writ of mandamus ordering the
respondent, the Honorable Patricia Hancock, presiding judge of the 113th
District Court of Harris County, to set aside her order of December 15, 2008,
granting the motion for protection filed by real party in interest, Gulf
Atlantic Operations, Inc. (AGAO@).  We conditionally grant the writ.  








                                                               Background

On
August 29, 2005, Hurricane Katrina struck the Gulf Coast, flooding major
portions of GAO=s asphalt refinery and terminals located in Chickasaw,
Alabama.  On September 13, 2006, relators denied GAO=s Hurricane Katrina-related losses in
excess of $5 million.  On June 7, 2007, GAO sued relators alleging they had (1)
wrongfully denied coverage under their respective policies for GAO=s losses from Hurricane Katrina above
a $5 million policy sub-limit, and (2) acted in bad faith by failing to conduct
a reasonable investigation of GAO=s claims, and by failing to
effectuate a prompt, fair, and equitable settlement of GAO=s claims after liability had become
reasonably clear.[1]  GAO seeks to
recover for property damage, business interruption losses, professional fees,
and other consequential damages.  








On
October 6, 2008, GAO filed a motion for partial summary judgment contending
relators, as a matter of law, had breached their respective policies by denying
GAO=s Katrina losses in excess of $5
million.  At issue in the summary judgment proceeding was whether GAO=s property, located in AFlood Zone AE,@ is subject to the $5 million
sub-limits in the policies Ain respect of Flood Zones >A= and >V.=@  The term AFlood Zones@ refers to a classification system
developed by Federal Emergency Management Agency (AFEMA@)for the purpose of determining
property insurance coverage.  Under the FEMA system, land areas have been
divided into different zones reflecting FEMA=s determination of flooding risk and
severity in those areas.  Relators responded to GAO=s motion with the contention that the
only reasonable construction of the sub-limit of A$5,000,000 per occurrence . . . in
respect of Flood Zones >A@ and >V=@ is that it applies to all AA@ flood zones, including Flood Zone
AE; therefore, the policies= $5 million flood sub-limit applies to all flood losses
sustained by GAO at properties located in Flood Zone AE.  

On
November 12, 2008, the trial court granted GAO=s motion for partial summary
judgment, finding, as a matter of law:  (1) relators had breached their
respective insurance policies by denying GAO=s claims for losses related to
Hurricane Katrina that were in excess of $5 million; (2) the $5 million
sub-limit Ain respect of Flood Zones >A= and >V=@ in the policies does not apply to
any of GAO=s Hurricane Katrina-losses; and (3) the $5 million sub-limit Ain respect of Flood Zones >A= >V=@ does not apply to GAO=s claims for business interruption
losses, professional fees or non-flood property losses.  GAO=s bad faith and tort claims are still
pending.  

Beginning
in September 2008, relators issued a number of third-party subpoenas and
requests for documents related to GAO=s understanding of the flood zone
designations at the time it acquired the insurance on the subject properties
and the subsequent negotiation of the sub-limit.[2] 
On November 21 and 24, 2008, GAO requested that relators withdraw each of the
third-party document requests to eliminate this Anon-relevant discovery.@  








On November
26, 2008, relators filed a motion for reconsideration and clarification,
requesting that the trial court suspend its partial summary judgment ruling and
rehear the issues after adequate discovery had been completed, and argued that
the limited amount of evidence strongly suggests GAO knew the Flood Zone
sub-limit applied to its properties.  Relators further argued Athe expectations and understanding of
the scope of coverage of the parties and their brokers is clearly relevant to
whether the Insurers acted in good faith,@ and alternatively requested that the
trial court allow discovery on the intentions and understandings of the parties
with respect to the scope of the coverage because it is relevant to relators= defense of GAO=s bad faith allegation.  On December
15, 2008, the trial court denied relators= motion for reconsideration and
clarification.  

On
December 9, 2008, GAO filed a motion for a protective order requesting that the
trial court strike relators= third-party discovery requests and limit the scope of
discovery because (1) the discovery directed toward third parties relates to
issues already disposed of in the partial summary judgment ruling, i.e., the $5
million sub-limit Ain respect of Flood Zones >A= and >V=@ does not apply as a matter of law to
GAO=s properties, and (2) whether
relators acted in bad faith rests on the facts before them at the time of the
denial of coverage, not on subsequent information developed during discovery. 
GAO further objected that the discovery requests are overly broad, unduly
burdensome, not reasonably related to any issue in this case, harassing,
oppressive, irrelevant, not reasonably calculate to lead to the discovery of
admissible evidence, not relevant to the subject matter of the remaining
claims, not relevant to any valid defense, without support in the pleadings,
nothing more than delay tactics, or merely a fishing expedition.  








On
December 15, 2008, the trial court granted GAO=s motion, striking most of relators= discovery requests and further
restricting relators Afrom seeking discovery to justify their denial of GAO=s Katrina claims beyond the documents
or information that were before Defendants at the time GAO=s Katrina claims were denied.@  On January 16, 2009, relators filed
this petition for writ of mandamus requesting that we compel the trial court to
set aside its December 15, 2008 protective order.  On January 29, 2009, we
issued an order staying the December 15, 2008 protective order, the February 2,
2009 discovery cut-off date, and the March 2, 2009 trial date.  

                                                       Standard of Review

To be
entitled to the extraordinary relief of a writ of mandamus, relators must show
that the trial court clearly abused its discretion and they have no adequate
remedy by appeal.  In re Team Rocket, L.P., 256 S.W.3d 257, 259 (Tex.
2008) (orig. proceeding).  A trial court clearly abuses its discretion if it
reaches a decision so arbitrary and unreasonable as to amount to a clear and
prejudicial error of law, or if it clearly fails to correctly analyze or apply
the law.  In re Cerberus Capital Mgmt., L.P., 164 S.W.3d 379, 382 (Tex.
2005) (orig. proceeding) (per curiam); Walker v. Packer, 827 S.W.2d 833,
839 (Tex. 1992) (orig. proceeding).  The scope of discovery is a matter of
trial court discretion.  In re CSX Corp., 124 S.W.3d 149, 152 (Tex.
2003) (orig. proceeding) (per curiam).  However, a writ may issue where the
trial court=s order improperly restricts the scope of discovery defined by the Texas
Rules of Civil Procedure.  Lindsey v. O=Neill, 689 S.W.2d 400, 401 (Tex. 1985)
(orig. proceeding) (per curiam).  








The
purpose of discovery is to ensure that lawsuits are A>decided by what the facts reveal, not
by what facts are concealed.=@  In re Alford Chevrolet-Geo,
997 S.W.2d 173, 180 (Tex. 1999) (orig. proceeding) (quoting Jampole v.
Touchy, 673 S.W.2d 569, 573 (Tex. 1984) (orig. proceeding)).  Therefore,
discovery is not limited to information that will be admissible at trial.  Jampole,
673 S.W.2d at 573.  Instead, to increase the likelihood that all relevant
evidence will be disclosed and brought before the trier of facts, the law 
contemplates a significantly larger class of discoverable evidence to include
anything reasonably calculated to lead to the discovery of material evidence.  Id.;
see also In re Transwestern Publ=g Co., L.L.C., 96 S.W.3d 501, 504 (Tex. App.CFort Worth 2002, orig. proceeding)
(citing Tex. R. Civ. P. 192.3(a)) (explaining rules governing discovery do not
require, as prerequisite to discovery, that information sought be admissible
evidence; it is enough that information appears reasonably calculated to lead
to discovery of admissible evidence).  This broad grant is limited by the
legitimate interests of the opposing party to avoid overly broad requests,
harassment, or disclosure of privileged information.  In re Am. Optical
Corp., 988 S.W.2d 711, 713 (Tex. 1998) (orig. proceeding) (per curiam).  

                                                      Abuse of Discretion

                                                             Scope
of Discovery

Relators
argue the trial court abused its discretion by prohibiting discovery relevant
to their defenses of GAO=s bad faith claims.  The Aspecial relationship@ between the insured and the insurer
imposes on the insurer a duty to investigate claims thoroughly and in good
faith, and to deny those claims only after an investigation reveals there was a
reasonable basis to do so.  Viles v. Sec. Nat=l Ins. Co., 788 S.W.2d 566, 568 (Tex. 1990).  A
breach of the duty of good faith and fair dealing will give rise to a tort
action that is separate and apart from any cause of action for breach of the underlying
contract.  Id. at 567.  The Texas Supreme Court, in Aranda v.
Insurance Company of America, set forth two elements of the tort of bad
faith: (1) the absence of a reasonable basis for denying or delaying payment of
the benefits of the policy, and (2) the carrier knew or should have known there
was no reasonable basis for denying the claim or delaying payment of the
claim.  748 S.W.2d 210, 213 (Tex. 1988).  The supreme court subsequently
clarified that an insurer breaches its duty of good faith and fair dealing by
denying or delaying payment of a claim when the insurer knew or should have
known that it was reasonably clear the claim was covered.  Universal Life
Ins. Co. v. Giles, 950 S.W.2d 48, 56 (Tex. 1997). 








The
first element of this test requires an objective determination of whether a
reasonable insurer under similar circumstances would have delayed or denied the
claimant=s benefits.  Aranda, 748
S.W.2d at 213.  The second element balances the right of an insurer to reject
an invalid claim and the duty of the carrier to investigate and pay compensable
claims.  Id.  This element will be met by establishing that the carrier
actually knew there was no reasonable basis to deny the claim or delay
payments, or by establishing that the carrier, based on its duty to
investigate, should have known there was no reasonable basis for denial or
delay.  Id.  Under the test, carriers will maintain the right to deny
invalid or questionable claims and will not be subject to liability for the
erroneous denial of a claim.  Id.  A[T]he issue in bad faith focuses not
on whether the claim was valid but on the reasonableness of the insurer=s conduct in rejecting the claim.@  Lyons v. Millers Cas. Ins. Co.
of Tex., 866 S.W.2d 597, 601 (Tex.1993).  

Evidence
establishing only a bona fide coverage dispute does not demonstrate that there
was no reasonable basis for denying a claim.  Provident Am. Ins. Co. v.
Castaneda, 988 S.W.2d 189, 193 (Tex.1998); State Farm Fire & Cas.
Co. v. Simmons, 963 S.W.2d 42, 44 (Tex. 1998).  Moreover, A[e]vidence of a coverage dispute is
not evidence that liability under the policy had become reasonably clear.@  Castaneda, 988 S.W.2d at
193.  ANor is bad faith established if the
evidence shows the insurer was merely incorrect about the factual basis for its
denial of the claim, or about the proper construction of the policy.@  Transp. Ins. Co. v. Moriel,
879 S.W.2d 10, 18 (Tex. 1994).  

Also, an
insurer does not act in bad faith where a reasonable investigation reveals the
claim is questionable.  United Servs. Auto. Ass=n v. Croft, 175 S.W.3d 457, 471 (Tex. App.CDallas 2005, no pet.) (citing St.
Paul Lloyd=s Ins. v. Fong Chun Huang, 808 S.W.2d 524, 526 (Tex. App.CHouston [14th Dist.] 1991, writ
denied)).  Instead, insurance carriers maintain the right to deny questionable
claims without being subject to liability for the erroneous denial of the
claim.  Id. (citing Aranda, 748 S.W.2d at 213).  








To
prevail on its bad faith claims, GAO must prove that relators denied its claims
when liability had become reasonably clear or failed to conduct a reasonable
investigation before making their coverage decision.  Relators= defenses to GAO=s bad faith claims include showing
that they were reasonable in applying the sub-limit, whether another reasonable
basis supported their coverage position, and whether there was a bona fide
dispute regarding coverage or construction of the policies.  

Pursuant
to the trial court=s order, relators are precluded from discovery that might
reveal whether GAO knew the subject properties were in Flood Zone AE at the time
it negotiated policy terms and whether GAO agreed and understood, at that time,
that Flood Zone A encompassed Flood Zone AE.  GAO argues the trial court
correctly limited discovery to documents or information possessed by relators
at the time they denied GAO=s Hurricane Katrina-related claims.  See Viles, 788
S.W.2d at 567 (AWhether a reasonable basis for the denial of a claim exists
must be judged by the facts before the insurer at the time such claim was
denied.@).  Relators, on the other hand,
contend that there is no authority that limits an insurer to its own files in
defending a bad faith claim.  See Provident Am. Ins. Co., 988 S.W.2d at
193B94 (A[C]onsidering all the facts in
existence at the time of the denial, there is no evidence that there was no
reasonable basis for Provident American=s denial of Castaneda=s claim (subpart G) or that liability
had become reasonably clear (subpart J).@) (emphasis added); Republic Ins.
Co. v. Stoker, 903 S.W.2d 338, 340 (Tex. 1995) (AThe facts compelling denial of the
Stokers= claim were in existence at the time
of the denial. . . . What is dispositive is whether, based upon the facts
existing at the time of the denial, a reasonable insurer would have denied
the claim.@) (emphasis added).  However, we need not resolve this issue in this
original proceeding.  








We agree
with relators= contention that evidence pertaining to the parties= understanding of the policy
provisions is relevant to the relators= defense that they acted reasonably
and in good faith in applying the $5 million sub-limit to GAO=s Hurricane Katrina-related claims. 
Such evidence is also relevant because the jury will be required to determine
whether a reasonable insurer acting under similar circumstances would have
adopted the same coverage position.  Moreover, evidence regarding whether GAO
understood that Flood Zone AAE@ was included in Flood Zone AA@ is relevant to whether GAO relied on
any alleged misrepresentations by relators and whether any alleged
consequential damages were foreseeable and proximately caused by any such
misrepresentation.  The scope of discovery is not limited to information that
is admissible at trial, but is expansive enough to include information that
appears reasonably calculated to lead to discovery of admissible evidence.  See
Tex. R. Civ. P. 192.3(a); Jampole, 673 S.W.2d at 573.  

                               Unduly
Broad and Burdensome Discovery Requests

GAO
further contends the trial court=s ruling is properly based on any of
its objections that the discovery requests are overly broad, unduly burdensome,
not reasonably related to any issue in this case, harassing, oppressive,
irrelevant, not reasonably calculated to lead to the discovery of admissible
evidence, not relevant to the subject matter of the remaining claims, not
relevant to any valid defense, without support in the pleadings, nothing more
than delay tactics, or merely a fishing expedition.  








The
trial court may exercise some discretion in granting a protective order and
controlling the nature and form of discovery.  Masinga v. Whittington,
792 S.W.3d 940, 940 (Tex. 1990) (orig. proceeding).  That discretion, however,
is not without bounds.  Id.  The party seeking to avoid discovery must
show a particular, specific, and demonstrable injury by facts sufficient to
justify a protective order, and the trial court may not grant a protective
order limiting discovery unless the party seeking such protection has met this
burden.  Id. at 940B41; see also Garcia v. Peeples, 734 S.W.2d 343, 345
(Tex. 1987) (orig. proceeding) (requiring Aa particular, articulated and
demonstrable injury, as opposed to conclusory allegations@).  Thus, the party resisting
discovery is not free to make conclusory statements that the requested
discovery is unduly burdensome or unnecessarily harrassing, but, instead, must
produce some evidence supporting its request for a protective order.  In re
Alford Chevrolet-Geo, 997 S.W.2d at 181.  In support of their motion for a
protective order, GAO produced no specific evidence that the third-party
discovery requests are unduly burdensome or unnecessarily harassing to it. 
Therefore, the trial court=s protective order cannot be properly based on GAO=s stock objections.  

                                            Cumulative
or Duplicative Discovery

GAO also
asserts the trial court has a duty to limit discovery that is cumulative or
duplicative, and relators concede the information they seek is additional to
that already in the summary judgment record.  See Tex. R. Civ. P.
192.4(a) (providing that discovery methods permitted by these rules should be
limited by the court if it determines that Athe discovery sought is unreasonably
cumulative or duplicative, . . .@).  Contrary to GAO=s argument, evidence regarding
communications with GAO submitted in support of relators= response to GAO=s motion for partial summary judgment
is from relators= own employees, while relators are seeking information about
those communication from GAO and third-party participants.  The information
sought is not impermissibly cumulative. 

Accordingly,
we conclude the trial court abused its discretion by limiting relators to
discovery of documents and information in their possession at the time they
denied GAO=s Hurricane Katrina-related claims.  

                                                                      Laches

Finally,
GAO argues relators= petition should be denied on the equitable ground of
laches.  See Rivercenter Assocs. v. Rivera, 858 S.W.2d 366, 367 (Tex.
1993).  GAO asserts relators have slumbered on their rights because they waited
over a year after filing their answer to serve the first of their third-party
subpoenas, they did not seek a continuance of the summary judgment hearing for
purposes of pursuing third-party discovery, failed to move to compel any
responses to the third-party subpoenas, and  waited until shortly before the
end of the discovery period to file this original proceeding.  








GAO
cites to the supreme court=s decision in Rivercenter Associates in support of
this argument.  However, Rivercenter Associates involved the application
of laches when a relator unjustifiably delays seeking mandamus relief.  858
S.W.2d at 367.  Such delay in seeking mandamus relief is not at issue here.  In
any event, when the trial court granted GAO=s motion for partial summary judgment,
on November 12, 2008, neither GAO nor relators had taken any depositions. 
Indeed, although the discovery period was set to close on February 2, 2009, GAO
waited until January 16, 2009, to unilaterally notice depositions for eighteen
witnesses.  Moreover, discovery on GAO=s bad faith claims necessarily
follows the trial court=s ruling that GAO=s Hurricane Katrina-related claims
are covered by the policies.  See Stoker, 903 S.W.2d at 341 (AAs a general rule there can be no
claim for bad faith when an insurer has promptly denied a claim that is in fact
not covered.@).  We find no lack of diligence on the part of relators to justify the
denial of their petition for writ of mandamus on equitable grounds.  

                                           Inadequate Remedy by Appeal

Relators
argue the errors created by the trial court=s December 15, 2008 discovery order
cannot be corrected on appeal.  To determine if a party has an adequate remedy
by appeal, we ask whether Aany benefits to mandamus review are outweighed by the
detriments.@  In re Prudential Ins. Co. of Am., 148 S.W.3d 124, 136 (Tex.
2004) (orig. proceeding).  An appeal from a trial court=s discovery order is not adequate if
(1) the appellate court would not be able to cure the trial court=s error on appeal; (2) the party=s ability to present a viable claim
or defense is vitiated or severely compromised; or (3) missing discovery cannot
be made a part of the appellate record.  In re Ford Motor Co., 988
S.W.2d 714, 721(Tex. 1998) (orig. proceeding); In re Colonial Pipeline Co.,
968 S.W.2d 938, 941 (Tex. 1998) (orig. proceeding) (per curiam).  








We agree
that the restricted discovery will, at the very least, severely compromise
relators= ability to develop and present a
viable defense to GAO=s claims.  Moreover, without the requested discovery,
relators will not be in position to proffer evidence in a bill of exceptions. 
Therefore, we conclude relators= substantial rights have been impaired and, there is no an adequate
remedy by appeal.  See Walker, 827 S.W.2d at 842 (stating appeal is not
adequate when parties stands to lose substantial right).  

                                                                Conclusion

We
therefore conditionally grant the petition for a writ of mandamus and direct
the trial court to vacate its December 15, 2008 order granting GAO=s motion for protection.  The writ
will issue only if the trial court fails to act in accordance with this
opinion.  We further lift the stay issued on January 29, 2009.  

 

 

 

 

/s/        Charles
Seymore

Justice

 

 

 

Panel consists of Chief Justice Hedges and Justices
Anderson and Seymore.  









[1]  GAO brought claims for breach of contract, breach of
representation and warranty, breach of the duty of good faith and fair dealing,
violations of the Texas Insurance Code, negligence, fraud, negligent
misrepresentation, and statutory and common law bad faith.  





[2]  Relators sought information from the following third
parties:  Trigeant EP, Ltd. (the company that sold the properties to GAO); El
Paso Corporation (a company that formerly held an interest in the GAO
facilities, and held a note on the properties at the time of the sale to GAO);
CRA Services (a company that had surveyed the properties and assessed the Flood
Zone designations); EDS Specialty Insurance Services-Travelers (the company that
prepared flood hazard determinations for the properties and issued a Flood
Certification to GAO in March 2005); Johnson, Deluca, Kennedy & Kurisky,
P.C. (attorneys who represented GAO during the negotiations for the purchase of
the properties); Stephen Heller & Associates, Inc. (a company that
performed hazard analysis of the properties, including analysis of flood risks
for Trigeant); Sutherland, Asbill & Brennan, LLP (attorneys who represented
Trigeant in the sale of the properties to GAO); John L. Wortham & Son, L.P.
(the company that brokered the renewal of GAO=s coverage in 2006 and 2007).